Argued June 7, affirmed September 10, 1971

RAYMOND, *Appellant, v.* SOUTHERN PACIFIC
COMPANY, *Respondent.*
488 P2d 460

632

*John Gordon Gearin,* Portland, argued the cause for appellant. With him on the briefs were Gearin, Hollister & Landis, John D. Ryan, and Ryan & Kennedy, Portland.

*James H. Clarke,* Portland, argued the cause for respondent. With him on the brief were McColloch, Dezendorf, Spears & Lubersky, and Wayne Hilliard, Portland.

Before O'CONNELL,* Chief Justice, and MCALLISTER, DENECKE, HOLMAN, TONGUE, and HOWELL, Justices.

HOLMAN, J.

This is an action for wrongful death brought by decedent's husband as administrator for his personal benefit. Plaintiff appealed from a judgment for defendant entered pursuant to a jury verdict.

Decedent was killed while riding as a passenger in a vehicle driven by plaintiff at the time a collision occurred with one of defendant's trains. Plaintiff's cause of action was alleged in two counts. One purported to be based on nuisance and the other on negligence. Defendant filed a demurrer to the nuisance count. The demurrer was sustained and the case was tried on the negligence theory.

1. The first assignment of error relates to the propriety of the trial court's allowance of defendant's demurrer to plaintiff's nuisance count. Plaintiff first contends that a demurrer will not lie to an alternative

---

* O'Connell, C. J., did not participate in the decision of this case.

theory of recovery, citing *Rich v. Tite-Knot Pine Mill*, 245 Or 185, 189, 421 P2d 370 (1966). There is no indication that this contention was ever raised in the trial court. The demurrer there was treated as testing plaintiff's first count. We will so treat it without regard to whether it was denominated a demurrer or a motion to strike. The propriety of the result is the important question. The situation is the same as that in *Rich v. Tite-Knot Pine Mill, supra,* except that here the question was raised on appeal. The demurrer in *Rich* was disposed of as if it had been a motion to strike. We will do the same here.

Plaintiff's next contention relating to the propriety of the trial court's action in striking his first count is as follows:

> "Nuisance is a separate theory of tort liability and plaintiff should be entitled to plead and prove that a particular crossing was a nuisance and he was damaged thereby."

A discussion of plaintiff's contention is probably best prefaced by Professor Prosser's introductory words to his chapter on Nuisance[⓪]:

> "There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition. Few terms have afforded so excellent an illustration of the familiar tendency of the court to seize upon a catchword as a substitute for any analysis of a problem; the defendant's interference with the plaintiff's interest is characterized as a

---

⓪ Prosser, *Torts* 592, § 87 (3d ed 1964).

'nuisance,' and there is nothing more to be said * * *." (Footnotes omitted.)

2, 3. The term "nuisance" is used in describing the infringement of two usually disparate rights. The first is an invasion of an individual's interest in the use and enjoyment of land and is called a "private" nuisance. The other is an unreasonable interference with a right which is common to members of the public generally and is denominated a "public" nuisance[2]. A public nuisance does not necessarily have anything to do with the use and enjoyment of land.

4. If, in the present case, the alleged interference with decedent's right to travel the highway unmolested constituted a nuisance (a decision which is unnecessary to a disposition of plaintiff's contention), it would, of course, fall within the category of public nuisance. Public nuisances must be vindicated by the state unless an individual can show that he has suffered a special damage over and above the ordinary damage caused to the public at large, in which case he has a private action for damages. It is not enough that he suffers the same inconvenience as everyone else.[3]

5. Plaintiff is confused by his failure to recognize that "nuisance" refers to the interest invaded and not to the type of conduct which subjects the actor to liability. Liability for the infliction of a nuisance may arise from an intentional, negligent, or reckless act, or from the operation of an abnormally dangerous activity.[4] An invasion of a right of the kind classed as a

---

[2] Id at 593-94; 4 Restatement of the Law of Torts, Scope and Introductory Note to Chapter 40, at 216-18.

[3] Prosser, *Torts* 608, § 89 (3d ed 1964); 4 Restatement of the Law of Torts, Scope and Introductory Note to Chapter 40, at 217.

[4] Prosser, *Torts* 594-98, § 88 (3d ed 1964); 4 Restatement of the Law of Torts, Scope and Introductory Note to Chapter 40, at

nuisance may occur, but, unless the invasion resulted from action to which the law attaches responsibility, there is no liability.

6. In determining whether plaintiff has alleged a separate theory of recovery in his first count, it is necessary to examine the count to decide, not whether he has described the invasion of an interest, but, whether he has alleged conduct on the part of defendant to which the law attaches responsibility. Thus, since plaintiff alleged negligence in his second count, it is necessary to determine whether the first count states facts from which a jury could find that defendant intentionally or recklessly killed plaintiff's wife or did so as the result of an abnormally dangerous activity for which the law imposes strict liability. Plaintiff's allegation is as follows:

> "Defendant is a Delaware corporation duly authorized to do business in the State of Oregon, in which it operates as a common carrier by rail and, among other places, operates a railroad which intersects at right angles the Hopewell-Lafayette Highway near Lafayette, particularly known as railroad crossing P739-7.

> "The foregoing crossing traverses a heavily traveled highway. Trees, shrubbery and brush along the right-of-way obscure and muffle the sound of approaching trains and narrowly restrict the view of motorists of approaching trains. The crossing is protected neither by gates, bells or flashing lights. By reason of the foregoing, the crossing is extra hazardous."

---

220-21; Taylor v. City of Cincinnati, 143 Ohio St 426, 55 NE2d 724, 28 Ohio Op 369, 155 ALR 44 (1944); *cf.* Furrer v. Talent Irrigation District, 258 Or 494, 509-12, 466 P2d 605 (1970). *But see* Seavey, *Nuisance: Contributory Negligence and Other Mysteries,* 65 Harv L Rev 984, 985 (1952).

7-9. The operation of a railroad is not considered by us to be an abnormally dangerous activity. We held in *McLane v. Northwest Natural Gas*, 255 Or 324, 328, 467 P2d 635 (1970) that in order for an activity to be abnormally dangerous it must be one which is extraordinary, exceptional, or unusual, considering the location in which it is carried on, and which presents a risk of grave harm that cannot be eliminated by the exercise of reasonable care. We see nothing extraordinary, exceptional, or unusual about the operation of railroad trains. Moreover, the defendant could have avoided the danger presented by the defects alleged to exist in its crossing and right of way by the exercise of reasonable care, either by rectifying such defects or by the care with which defendant operated its train. We should add that the meaning of the word "extrahazardous" as used in describing railroad crossings, where railroads owe a greater degree of care than they normally do to the traveling public, bears no relation to the meaning of the use of the term "abnormally dangerous," as used in *McLane, supra,* to describe an activity upon which strict liability is imposed for the harm it causes.

We do not believe that the facts alleged are sufficient to sustain a charge of intentional or reckless conduct. There was no error in refusing to allow plaintiff to proceed on his first count.

Plaintiff's next assignment of error relates to the trial court's denial of plaintiff's motion for a mistrial because of alleged misconduct of defendant's counsel. Before the commencement of the trial, the trial court conferred with counsel. The fact that plaintiff had remarried since his wife's death was discussed. The court instructed counsel that he considered the remar-

riage irrelevant and that no reference was to be made to it. During the cross-examination of the last witness in plaintiff's case in chief, defendant's counsel asked plaintiff who it was that plaintiff was presently living with, and plaintiff replied that he was living with his wife. Immediately thereafter, the trial court offered plaintiff a mistrial, and the following colloquy took place between plaintiff's counsel and the court:

"[Plaintiff's Counsel]: I have an idea. If I make a motion for a mis-trial, will your Honor take it under advisement until after the jury verdict?

"The Court: Yes, I can properly do that.

"[Plaintiff's Counsel]: At this time, your Honor, because of the prejudicial misconduct of the defendant, we ask for a mis-trial.

"The Court: I will take it under advisement * * * *."

After the adverse jury verdict, the trial court denied plaintiff's motion.

10-12. Defendant's counsel was guilty of misconduct. The plaintiff's remarriage was irrelevant. *Prauss v. Adamski,* 195 Or 1, 23, 244 P2d 598 (1952). However, when a party has knowledge during a trial of irregularity or misconduct, he must assert his right to a mistrial immediately. He has no right to gamble on the outcome of the case and to avail himself of the irregularity or misconduct if a decision is adverse to him. *Transamerica Title Ins. v. Millar,* 258 Or 258, 482 P2d 163 (1971); *Wills v. Petros et al,* 225 Or 122, 129, 357 P2d 394 (1960). Plaintiff was willing to gamble, first, that he would win the case, and, second, that if he did not win, the trial court would grant his motion for a mistrial. Plaintiff may gamble if he desires, but, if he loses, he cannot use as a basis for

an appeal the trial court's refusal to grant his motion. The public's interest in the efficient use of judicial time and in the finality of the judicial process does not permit it.

13-14. Plaintiff's last two assignments of error can be considered together. He contends the trial court erred in its instruction on plaintiff's duty to look and listen for approaching trains because the jury was not informed that in its consideration of whether plaintiff violated these duties it could take into account plaintiff's familiarity, if any, with the crossing. An exception was taken to the giving of the instruction on the duty to look and listen absent the qualification, as well as to the court's failure to give the requested instruction which embodied the qualification. The requested instruction was as follows:

"In considering the issue of the contributory negligence of Mr. Raymond, you are to take into consideration his familiarity, if any, with the crossing in question."

Plaintiff states in his brief as follows:

"It is well settled that a motorist, in approaching a grade crossing, has a duty to look and listen for trains, but only if he knew or *in the exercise of reasonable care should have known of the crossing.*" (Emphasis ours.)

Plaintiff's statement of the law is correct. *Wallace v. Louisville and Nashville Railroad Company*, 332 F2d 97, 99 (6th Cir 1964); *Hurt v. Y. & M.V.R. Co.*, 140 Tenn 623, 205 SW 437, 442 (1918). However, his requested instruction was not.

Plaintiff's requested instruction implied that he had no duty to look and listen if he did not know of the crossing. It failed to inform the jury that plaintiff

must exercise reasonable care in ascertaining the existence of a crossing.

In effect, plaintiff's exception informed the trial court that its instruction regarding plaintiff's duty to look and listen was improper because the instruction was not qualified in a manner equivalent to plaintiff's requested instruction. Where the requested instruction is faulty, the exception to the instruction given forms no basis for a meritorious appeal.

The judgment for the defendant is affirmed.

Tongue, J., concurs in this result.