Argued and submitted July 1, 1981, affirmed as modified, remanded May 25, 1982

## CLASS et al,
*Respondents/Cross-petitioners on review,*
*v.*
## CARTER et al,
*Petitioners/Cross-respondents on review,*

(No. 200 126, CA 18302,
SC 27724, 27726)

645 P2d 536

Elizabeth K. Reeve, Portland, argued the cause for petitioners/cross-respondents on review. With her on the petition were Ridgway K. Foley, Jr., and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, and Ray D. Sherwood, Martin J. Howard, and Gilley and Busey, Portland. On the brief were Ray D. Sherwood, and Gilley and Busey, Portland.

Frank V. Langfitt, III, Portland, argued the cause for respondents/cross-petitioners on review. With him on the petition and brief was Lindsay, Hart, Neil & Weigler, Portland.

Before Denecke, Chief Justice, and Lent, Linde, Peterson, and Campbell, Justices.

PETERSON, J.

## PETERSON, J.

This case began as an FED action in district court. We draw upon the Court of Appeals opinion for the facts and procedural history:

"* * * Plaintiff Zusman's predecessors in interest owned land abutting the Columbia Slough and a submerged lands lease in the slough from the state. They leased the premises to defendant Carter, who installed floating moorage facilities and leased spaces to the other defendants and the plaintiffs Class. Zusman purchased the land and took an assignment of the state lease and leased the entire property to the Classes. The sellers, the Classes and Zusman gave Carter the notice to vacate required under his original lease. The FED action followed. [The FED action was based upon a lease provision providing for termination upon sale of the premises by Zusman's grantors.]

"Some of the defendants filed counterclaims, Carter's alone being in excess of the district court's $3,000 statutory limitation. ORS 46.060. Pursuant to ORS 46.070, defendants moved to transfer the cause to circuit court, and it was transferred.

"On plaintiffs' motion the circuit court struck the counterclaim and ordered that the cause be returned to district court and that the defendants not be allowed to plead counterclaims in excess of the district court's jurisdictional limit. The basis for the motion was that the Carter counterclaim was not permissible under the Residential Landlord and Tenant Act. ORS 91.700 *et seq* * * *. The circuit court order, however, was made '[w]ithout making a determination as to whether or not the Residential Landlord Tenant Law *[sic]* applies in this matter * * *.'

"The district court again exercised jurisdiction over objections, and after further proceedings it entered an order and judgment awarding restitution of the premises and dismissing defendants' affirmative defenses and counterclaims. All of the defendants except Perry and Dixon appealed to this court.

"When the case came on for argument in this court, plaintiffs filed a stipulated order for dismissal of the appeals of defendants Halbrook, Bridwell and Jorgensen and a motion to dismiss the appeals of defendants Carter and Hollriegal on the ground that their appeals had become moot by reason of their no longer being in possession. The facts asserted in the affidavit supporting the motion have not been denied. Carter had moved his houseboat and

his boat from the moorage and sold the floating facilities to one Roe, who in turn sold them to the Classes. Hollriegal was evicted by the sheriff under a writ of restitution." 51 Or App at 5-6.

The Court of Appeals held that the circuit court should not have remanded the cause to the district court and that the district court therefore lacked jurisdiction to try the case. The court reversed and remanded with instructions to vacate the judgment of restitution, reinstate the counterclaims and to transfer the case to circuit court.

## I
## COUNTERCLAIMS IN COMMERCIAL FED ACTIONS

We first examine the defendants' contention that the circuit court erred in granting the plaintiffs' motion to strike their counterclaims. The order striking the counterclaims contains no explanation for the action taken, and the reason is not apparent from the record.[1] The plaintiffs, in moving to strike the defendants' counterclaims, asserted that no counterclaims were permissible in this commercial FED action.[2]

The form of action of forcible entry and detainer (FED) has been a part of Oregon statutory law since 1864. General Laws of Oregon, 743-745, October 21, 1864. FED proceedings are designed to be quick and summary, to obtain peaceful resolutions of possessory disputes. Only one issue is involved: the right to possession. The complaint requires but four allegations: (1) a description of the premises with convenient certainty; (2) that the defendant has possession; (3) that the defendant entered upon the premises with force or unlawfully holds the premises with force; and (4) that the plaintiff is entitled to possession of the premises. ORS 105.125. Service of the summons must be made not less than three nor more than 10 days before

---

[1] One possible explanation is that the defendants were claiming that their claims were under the Residential Landlord and Tenant Act, which permits the filing of counterclaims "for any amount, not in excess of the jurisdictional limits of the court in which the action is brought." The trial court may have believed that if the defendants' contentions were correct, the case had to be remanded in accordance with *Ingersoll v. Mattson*, 47 Or App 463, 470, 614 P2d 1197 (1980).

[2] At oral argument, the defendants conceded that, so far as Carter is concerned, this case is not governed by the Residential Landlord and Tenant Act, ORS 91.700 *et seq.*

the court appearance date. ORS 105.135. Postponements of more than two days require an undertaking. ORS 105.140. The jury renders a verdict of "guilty" if they "find the complaint true"; "not guilty" if they find the complaint "not true." ORS 105.150. The judgment is for restitution of the premises, and nothing more.[3]

■ There is no provision in ORS chapter 105 for the assertion of counterclaims. This court has never considered whether, in a commercial FED, the defendant may assert a counterclaim. In almost every jurisdiction considering the question, the court has held that counterclaims may not be asserted in FED actions because the object the legislature had in view—summary determination of possessory disputes—would be frustrated. *Hunter v. Porter,* 10 Ida 72, 77 P 434 (1904), is illustrative. There, a tenant counterclaimed for damages allegedly arising from the landlord's violation of covenants in the lease. The court held:

> "* * * A study of the various provisions of this chapter of 19 sections satisfies us that it was the purpose of the Legislature to provide a summary method whereby a landlord might collect his rent, or, in default thereof, obtain possession of his property. * * * [The statute] seems to only contemplate a defense to the charge of forcible or unlawful detainer, and does not appear to provide for the defendant seeking affirmative relief or becoming a cross-actor in such action. * * * [E]very provision of that section looks to the trial of only one issue, namely, whether the defendant is either a forcible or unlawful detainer of the premises. To allow the issue of unliquidated damages growing out of an independent covenant contained in the lease, and made by the lessor, to be set up either by way of cross-complaint or counterclaim in such an action, would frustrate the purposes and object of the statute, and at the same time give

---

[3] Judge Buttler, in *Grove v. The Hindquarter Corporation,* 45 Or App 781, 786, 609 P2d 840, (1980), summarized the procedure as follows:

"It is apparent that the statutory procedure is designed to provide a quick determination of one question, and one question only: the right to possession. Although defenses, including equitable defenses, may be interposed, *Fry v. D. H. Overmyer Co., Inc.,* 269 Or 281, 525 P2d 140 (1974), the issues so raised may relate only to the right to possession and the summary nature of the proceeding is not changed. While an action for rent may be joined with an FED, ORS 16.221(2), the action ceases to be a summary proceeding if that is done; the defendant has the same time to appear as he has in any action at law for the recovery of rental due. * * *"

the tenant an advantage over the landlord, in that he would be allowed to both retain the premises and the rental value thereof, while litigating with his landlord a minor issue as to some real or fancied grievance which he might never be able to establish in court. If a defense of this kind could be maintained, a landlord would never know how much rent was due him, or how much he could safely demand. In other words, so soon as his tenant began to complain of some real or imaginary grievance growing out of the terms of the lease, the landlord would be unable to say how much was due him on rents from his tenant until a court had passed upon the tenant's claim for damages. Such a claim could generally be expected to appear as an issue in the case. This question has been frequently considered by the courts, and in one of the late authorities on the subject (Phillips v. Port Townsend Lodge, No. 6, F. & A. M., 36 Pac. 476) the Supreme Court of Washington says: 'The very object the Legislature had in view in enacting the statute under which the appellants were proceeding was to afford a summary and adequate remedy for obtaining possession of premises withheld by tenants in violation of the covenants of their lease, and this object would be entirely frustrated if tenants were permitted to interpose every defense usual or permissible in ordinary actions at law. * * *''

Cases to the same effect include *Carmack v. Drum,* 27 Wash 382, 67 P 808, 809 (1902); *Peterson v. Kreuger,* 67 Minn 449, 450-451, 70 NW 567 (1897); *Moroney v. Hellings,* 110 Cal 219, 42 P 560 (1895); *Ralph v. Lomer,* 3 Wash 401, 28 P 760, 763 (1891). Relevant cases are collected in 2 Tiffany, Landlord and Tenant 1766-1767, § 274 (1910).

Since 1975, ORS 46.060 has provided:

"(1)  Except as provided in subsection (2) of this section, the district courts shall have exclusive jurisdiction in the following cases:

"(a)  For the recovery of money or damages only when the amount claimed does not exceed $3,000. * * *.

"* * * * *.

"(e)  To hear and determine actions of forcible entry and detainer." Or Laws 1975, ch 611, § 18.[4]

---

[4] *Compare Wilson v. Matthews,* 291 Or 33, 37, 628 P2d 393 (1981), which held "that the later 1975 grant of exclusive jurisdiction in FED actions to the district court under ORS 46.060(1)(e) modifies by implication the earlier grant of concurrent jurisdiction [to the circuit court, district court and justice court] contained in

The defendants contend that counterclaims are permitted in FED actions because ORS 46.070 provides:

*"In all actions instituted in a district court a defendant shall have the right to plead a counterclaim in excess of the jurisdiction of the court.* If a defendant has pleaded a counterclaim in excess of the jurisdiction of the district court, the court shall strike the counterclaim and proceed to try the cause as though it had never been filed, unless the defendant files with his counterclaim a motion requesting the cause to be transferred to the circuit court accompanied by the tender of the costs of such transfer. \* \* \*" (Emphasis added.)

ORS 46.075 sets forth the procedure for transferring the case to the circuit court:

"(1) The district court shall order the transfer to the circuit court of every cause authorized by this chapter to be so transferred. Within 10 days therefrom the clerk of the district court shall file with the clerk of the circuit court a transcript of the cause including all the material entries in the docket of the district court and all of the original papers relating to the case. Thereupon the district court shall proceed no further with the cause. The case shall be considered transferred to the circuit court which shall then have jurisdiction to try and determine the cause."

ORS 46.070 and 46.075 were first enacted (albeit in a slightly different form) in 1935. Or Laws 1935, ch 401, § 3. Although no legislative history of ORS 46.070 and ORS 46.075 is available, we have no doubt that their purpose is procedural, to avoid recurrent jurisdictional disputes between the circuit court and the district court. The statutes are designed to achieve jurisdictional certainty when counterclaims in excess of the district court jurisdictional limits are filed.

We do not believe that the legislature, in enacting ORS 46.070, meant to change the summary nature of FED procedures or to limit the common law powers of courts to restrict counterclaims in FED cases. The FED statutes in ORS chapter 105 themselves suggest that counterclaims are not permitted in FED cases in the absence of express

---

ORS 105.110. \* \* \* [C]ircuit courts no longer have jurisdiction over FED actions in those counties in which a district court has been established, but retain such jurisdiction in such counties without a district court."

statutory authorization, for there is no provision for any determination other than the summary determination referred to above. This conclusion is bolstered by the fact that when the legislature intended that counterclaims be assertable in FED actions, it specifically provided for them. ORS 91.810 permits counterclaims under the Residential Landlord and Tenant Act, but limited to "the amount that he may recover under the rental agreement." ORS 646.638(6) permits counterclaims "arising out of a violation of ORS 646.605 to 646.652 [Unlawful Trade Practices]" in "any action brought by a seller or lessor against a purchaser or lessee of real property." The fact that specific provision was made for FED counterclaims suggests that the legislature understood that counterclaims were not otherwise permitted in FED actions.

4. ORS 46.070 was not intended to alter the summary nature of FED actions. We hold that ORS 46.070 and 46.075 are general procedural statutes designed to achieve efficient immediate resolution of jurisdictional problems arising from the assertion of counterclaims in excess of the jurisdiction of the district court and that ORS chapter 105.105 *et seq* prohibits the assertion of counterclaims not otherwise authorized by statute in commercial FED actions.

## II
## PROPRIETY OF REMAND TO DISTRICT COURT

The circuit court was correct in striking Carter's counterclaims. Even so, we must consider whether it was proper for the circuit court to remand the case to the district court.

There is no question that the case had to be filed in the district court, for the district court has "exclusive jurisdiction * * * to hear and determine actions of forcible entry and detainer." ORS 46.060(1)(e); *Wilson v. Matthews,* 291 Or 33, 37, 628 P2d 393 (1981). Our holding in part I above makes it necessary for us to consider what action was appropriate for the circuit court *after* the counterclaims were stricken. Until now, this court has not considered this issue.[5]

---

[5] The Court of Appeals has considered related issues in *Ingersoll v. Mattson,* 47 Or App 463, 614 P2d 1197 (1980); *L.F.C., Inc. v. Burtchaell,* 47 Or App 471, 614 P2d 1201 (1980); and *Brood v. Davis,* 42 Or App 587, 601 P2d 487 (1979).

We start with an analysis of the statutes, ORS 46.070 and 46.075. ORS 46.075 requires the district court to "order the transfer to the circuit court" whenever a defendant has complied with ORS 46.070. The district court is enjoined to "proceed no further with the cause" because "the circuit court * * * shall then have jurisdiction to try and determine the cause." Literally, the statute would seem to mean that an FED defendant, merely by filing a counterclaim containing a prayer for over $3,000 in damages, can oust the district court of jurisdiction. The statute does not expressly state that the counterclaim be valid, legally sufficient, or even that it be filed in good faith. The statute requires only that it be pleaded, and that an appropriate motion for transfer be filed. ORS 46.075 makes no provision for remand to the district court.

In a sense, competing forces are involved in the case at bar. One force is the need for jurisdictional certainty. One construction of the statutes would be that the district court could not examine the propriety, form or sufficiency of the counterclaim, with the result that, after the case is transferred to the circuit court, jurisdiction remains in the circuit court, even after a counterclaim is stricken. The vice of this rule is that a defendant can forum shop by merely filing a document entitled "counterclaim" which includes a prayer in excess of $3,000.[6] The counterview, consistent with the assumption that the legislature was not encouraging forum shopping, is that the district court, prior to transferring the cause, can look beyond the ad damnum clause of a counterclaim to determine whether the counterclaim is, in truth and in fact, "in excess of the jurisdiction of the court."

We believe that the statutes can be followed and that the legislative intent can be achieved without sacrificing jurisdictional certainty or permitting unwarranted forum shopping. In Part I we held that counterclaims cannot be asserted in commercial FED actions, absent statutory authorization. Although Carter's counterclaims in the case at bar, judged by their ad damnum clauses, appear to "be in excess of the jurisdiction of the court," the counterclaims are, in fact, impermissible and subject to

---

[6] Compare *Ingersoll v. Mattson*, 47 Or App 463, 614 P2d 1197 (1980).

being stricken on motion. The "right to plead a counterclaim in excess of the jurisdiction of the court" to which reference is made in ORS 46.070, contemplates the right to plead a counterclaim otherwise assertable in the case. If a defendant has no right, absent a specific statute, to plead any counterclaim in a commercial FED action, upon appropriate motion the district court should strike it and deny the motion to transfer the cause to the circuit court. This conclusion is consistent with the statute and the legislative intent upon which the statute is based. Nothing in the statute suggests that the legislature intended that the exclusive jurisdiction of the district court in commercial FED actions could be avoided by filing impermissible counterclaims.

■    We hold that, in a commercial FED action brought in the district court, a counterclaim not authorized by statute, whatever its amount, may be stricken by the district court upon motion of the plaintiff, even if the defendant files a motion to transfer under ORS 46.070. If the counterclaim is stricken, the case should not be transferred to the circuit court under ORS 46.075.

■    However, this case was transferred to the circuit court. ORS 46.075 provides that, once transferred, the circuit court alone has "jurisdiction to try and determine the cause." Should the district court, because of error or doubt as to the merits of striking the counterclaim, transfer the case to the circuit court, the cause remains in the circuit court after transfer and should not be remanded to the district court, even if the circuit court determines that the counterclaim should be stricken. In FED cases, the circuit court does not sit as an appellate court over the district court. Once transferred, the circuit court alone has jurisdiction of the cause.[7]

We hold:

1.    In an FED action to recover commercial premises, the defendant cannot assert a counterclaim against the plaintiff unless the counterclaim is authorized by statute.

---

[7] *Compare Ingersoll v. Mattson,* 47 Or App 463, 614 P2d 1197 (1980) and *Brood v. Davis,* 42 Or App 587, 601 P2d 487 (1979).

2. If an unauthorized counterclaim is filed in a commercial FED action, upon motion the district court should strike the counterclaim.

3. ORS 46.070 and ORS 46.075 are procedural statutes, the purpose of which is to avoid jurisdictional disputes between the district court and other courts, in this case, the circuit court.

4. If an unauthorized counterclaim in excess of the jurisdiction of the district court is filed in a commercial FED action, and appropriate motion is made under ORS 46.070, the district court has the power to strike the counterclaim and retain jurisdiction of the case. If the district court transfers the case to the circuit court, thereafter the circuit court alone has jurisdiction to try and determine the cause. If it should later be established that the counterclaim should be stricken, is not proved, or should not have been filed, jurisdiction nonetheless remains in the circuit court, once the transfer is made.

The circuit court erred in remanding to the district court. The district court had no jurisdiction to decide this case. Therefore, the case must be remanded to vacate the order and judgment of restitution entered on June 16, 1980, and to transfer the cause to the circuit court for further proceedings.[8]

Affirmed as modified. Remanded to district court for transfer to circuit court.

---

[8] We wish to make it clear that this holding is limited to commercial FED cases. We are not suggesting that, in other cases, the district court can refuse to transfer to the circuit court under ORS 46.070-47.075 if it believes the counterclaim is not legally sufficient. *Compare Ingersoll v. Mattson,* 47 Or App 463, 614 P2d 1197 (1980), with *L.F.C., Inc. v. Burtchaell,* 47 Or App 471, 614 P2d 1201 (1980). *See also Brood v. Davis, supra* n 5, opinion withdrawn, 44 Or App 261, 605 P2d 749 (1980).

In this case we are not concerned with a tenancy to which the Residential Landlord and Tenant Act, ORS 91.700 *et seq,* applies and we do not reach any issue, the resolution of which is dependent thereon. We note that Hollriegal pleaded a counterclaim, asserting that his counterclaims were proper under the Residential Landlord and Tenant Act. It is not necessary for us to decide whether, as between the plaintiffs and Hollriegal, the Residential Landlord and Tenant Law has any application. Our remand is without prejudice to his right to reassert those counterclaims.