Submitted on record and briefs April 9, affirmed in part; reversed in part; and
remanded October 27, 1982

MEYER,
*Appellant,*
*v.*
4-D INSULATION COMPANY, INC.,
dba Quality Insulation Co.,
*Respondent.*

(No. 78-2903-L-1, CA A21804)

652 P2d 852

Frank R. Alley, III, and Heffernan, Fowler, Alley & McNair, Medford, filed the briefs for appellant.

Gregory A. Parker, Ashland, filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff brought this action in circuit court for damages to real property caused by a fire allegedly resulting from defendant's negligence in installing insulation in direct contact with the fluepipe of a woodstove in plaintiff's residence. The trial court dismissed the action. On appeal, plaintiff assigns error to the trial court's (1) striking plaintiff's allegation of mental distress from the third amended complaint and (2) dismissing the fourth amended complaint for lack of subject matter jurisdiction.

In his third amended complaint,[1] plaintiff sought to recover $1,200 for smoke, heat and water damage to his house and furnishings arising out of defendant's alleged negligence and $5,000 for "inconvenience, annoyance and discomfort," which plaintiff characterizes as damages for mental distress. On defendant's motion, the trial court struck the latter allegation. Plaintiff filed a fourth amended complaint seeking only the $1,200 for property damage. On defendant's motion, the trial court dismissed the action on the ground that district courts have exclusive jurisdiction when the amount claimed is less than $3,000.

The first assignment presents the narrow issue whether pleaded damages for mental distress are recoverable in an action alleging only damage to property caused by negligence. This question is one of first impression in this state, although it has arisen elsewhere. *See, e.g., Kuhr*

---

[1] In relevant part the third amended complaint provided:

"V.

"As a result of the fire in Plaintiff's residence, Plaintiff's property was damaged in the following respects:

"1. Irreparable damage to Plaintiff's wood stove.

"2. Smoke, heat and water damage to the ceilings and walls of Plaintiff's residence.

"3. Smoke, heat and water damage to Plaintiff's furniture and carpeting, requiring the repair or replacement thereof; which damages are in the sum of $2,253.14, of which $1,053.14 has been repaid to Plaintiff, all to Plaintiff's damage in the sum of $1,200.00.

"VI.

"As a result of the fire in Plaintiff's residence, Plaintiff was subjected to inconvenience, annoyance and discomfort and was damaged thereby in the sum of $5,000."

*Bros. Inc. v. Spahos,* 89 Ga App 885, 81 SE2d 491 (1954) (mental pain and suffering not recoverable damages in action for faulty installation of furnace causing home fire, where the injury complained of was not a personal tort but an injury to property, without a showing of malicious, wilful or wanton conduct); *Sahuc v. U.S. Fidelity & Guaranty Co.,* 320 F2d 18, 21 (5th Cir 1963) (Louisiana case law permits recovery of mental anguish damages in negligence cases involving fright or nervous shock from being present in or near an accident, but owner of house damaged by fire proved no fright).

■■■ In actions specifically brought for intentional infliction of emotional distress, "extreme and outrageous" conduct is required. *Mooney v. Johnson Cattle,* 291 Or 709, 726, 634 P2d 1333 (1981); *Pakos v. Clark,* 253 Or 113, 453 P2d 682 (1969). In other actions, the general rule where damages for mental distress alone are sought is that some physical injury is required. *See Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or 543, 558-59, 652 P2d 318 (1982); *Edwards v. Talent Irrigation District,* 280 Or 307, 309, 570 P2d 1169 (1977). The rule for which plaintiff contends is that damages for mental distress are recoverable for negligent damage to any property as long as (1) there is an independent basis of liability and (2) the damages are the "common and predictable" result of the type of conduct involved. A correct statement of the first part of that proposition, as demonstrated by the case law, is that *recovery of damages for mental distress absent physical injury is allowed where there is an independent basis of liability in certain cases.* The cases have made reference not only to the quality of the tortfeasor's conduct,[2] as in certain intentional torts, but also to the kind of interest invaded, as in private nuisance and invasion of privacy. The cases can be grouped into four main categories, although they cannot be said to form a definite pattern: (1) certain intentional

---

[2] Damages for emotional distress are compensatory, not punitive. Thus, the quality of the conduct is per se irrelevant, because negligently caused damage may be as disturbing as that caused by a defendant intentionally. Intentionally caused damage causes an additional emotional impact only when the quality of the conduct becomes known to the victim and adds to his remorse or outrage at the destruction of his property. If damages for emotional distress are truly compensatory rather than a disguised form of punitive damages, then the relevance of the quality of the conduct is in its effect on the victim.

torts, including trespass to land, *Douglas v. Humble Oil,* 251 Or 310, 445 P2d 590 (1968); *Senn v. Bunick,* 40 Or App 33, 594 P2d 837, *rev den* 287 Or 149 (1979); *but see Melton v. Allen,* 282 Or 731, 580 P2d 1019 (1978) (emotional distress damages disallowed in trespass to automobile); intentional interference with contractual relations, *Mooney v. Johnson Cattle, supra;* conversion, *Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974) and *Douglas v. Humble Oil, supra;* racial discrimination, *William v. Joyce,* 4 Or App 482, 504, 479 P2d 513 (1971); (2) private nuisance, *Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 495 P2d 1193 (1972); and *Edwards v. Talent Irrigation District, supra;* (3) invasion of privacy, *Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438 (1941); *Tollefson v. Price,* 247 Or 398, 430 P2d 990 (1967); and (4) miscellaneous cases: unlawful disinterment of spouse's remains, *Hovis v. City of Burns,* 243 Or 607, 415 P2d 29 (1966); infringement of right to child custody resulting from attorney's failure to deliver client's passport into "escrow" to prevent client from taking child out of the country, *McEvoy v. Helikson,* 277 Or 781, 788-89, 562 P2d 540 (1977).

It is true that in some of those cases the rule applied is that the mental distress must be the "direct, natural and proximate result" of the wrongful act, *Hinish v. Meier & Frank Co., supra,* 166 Or at 506, or the "common and predictable" result of the defendant's conduct, *Mooney v. Johnson Cattle, supra,* 291 Or at 718. Sole reliance on that rule begs the question regarding the actions in which such damages have been recognized and allowed by Oregon courts. Such damages have been allowed on an *ad hoc* basis, but not on the basis of the "common and predictable result" rule advanced by plaintiff.

■ It is difficult to imagine a circumstance in which damage to any property does not directly, naturally and predictably result in some emotional upset. Unless some other line is drawn, as we believe there must be as a policy matter, neither the quality of a defendant's conduct nor the predictability of distress as a result of property damage alone or together form a basis for an award of compensatory damages for emotional distress. Rather, it is the kind of interest invaded that, as a policy matter, is believed to be of sufficient importance to merit protection from emotional

impact, that is critical. Regardless of the language used to describe when such damages are recoverable, the Oregon cases allowing such damages all involve an interference with the person beyond the inconvenience and distress always resulting from interference with property.

 Plaintiff contends (and the dissent argues) that this case is governed by *Macca* and *Edwards.* Those cases do not support recovery of damages for mental distress in this case. In *Macca,* the plaintiff was subjected to repeated telephone calls occasioned by a telephone company's negligent listing of her telephone number under the name of a florist shop. The court characterized the invasion as a private nuisance:

> "We conclude that the erroneous listing of plaintiff's telephone number and the numerous telephone calls to plaintiff resulted in an invasion of plaintiff's right to enjoy her property without unreasonable interference. As such it is governed by the law relating to a private nuisance, and plaintiff is entitled to recover for mental distress resulting from defendant's negligent act." 262 Or at 418.

This language relates the right to mental distress damages to the fact that the action was for a private nuisance. The court explained that nuisance may arise from intentional, reckless, or negligent conduct on the defendant's part, or from operation of an abnormally dangerous activity. 262 Or at 419. Thus, the right to damages for mental distress was predicated on the kind of interest invaded, rather than on a particular level of culpability. The court elaborated on the kinds of invasions that may be included in a private nuisance action:

> "* * * The gist of the action is the invasion of the individual's interest in the use and enjoyment of land. *Raymond v. Southern Pacific Co.,* [259 Or 629, 634, 488 P2d 460 (1971)]. It includes the disturbance of the comfort or convenience of the occupant of the land. Prosser, [Torts] 592, § 89 [(4th ed 1971)]; *York et ux v. Stallings et al,* 217 Or 13, 21, 341 P2d 529 (1959). Dean Prosser gives as examples of the latter unpleasant odors, smoke or dust, loud noises, and repeated telephone calls."

*Macca* thus turned on the fact that the invasion was an ongoing interference with the use and enjoyment of the plaintiff's residence. In contrast, plaintiff here alleges no

such ongoing interference, but merely property damage to a house. That, without more, is not the kind of interference with use and enjoyment of property that constitutes a nuisance.

A footnote in *Macca* appears to explain the rule in broader terms:

> "Allowing recovery for mental suffering and anguish unaccompanied by physical injuries under the circumstances of the present case is in accord with previous decisions of this court. *Where an independent basis of liability exists, irrespective of whether there existed physical injuries, recovery has been uniformly allowed for mental suffering and anguish.* Douglas v. Humble Oil, 251 Or 310, 445 P2d 590 (1968) (conversion); Tollefson v. Price, 247 Or 398, 430 P2d 990, 33 ALR3d 149 (1967) and Hinish v. Meier & Frank Co., 166 Or 482, 113 P2d 438, 133 ALR 1 (1941) (invasion of privacy); Williams v. Joyce, 91 Adv Sh 1481, 4 Or App 482, 479 P2d 513 (1971) (racial discrimination); Hovis v. City of Burns, 243 Or 607, 415 P2d 29 (1966) (wrongful disinterment of remains of plaintiff's husband); Rockhill v. Pollard, 259 Or 54, 485 P2d 28 (1971) ('outrageous' conduct by physician in treating a patient, citing 1 Restatement of Torts 2d, § 46, comment j.) For a general discussion and criticism of the rule prohibiting recovery for mental distress without a physical injury or pecuniary loss, see Prosser, Law of Torts (4th ed) 327-330, § 54." 262 Or at 418 n 1. (Emphasis added.)

The cited cases for the most part are examples of certain intentional torts, with the addition of invasion of privacy and unauthorized mishandling of a corpse where the level of culpability could be less than intentional. What the court in *Macca* actually held, despite the inclusion of broader language in the footnote, was that damages for mental distress are recoverable in negligence actions, even absent physical injury, where defendant's conduct constitutes a private nuisance.

In *Edwards,* decided five years after *Macca,* the plaintiffs asserted they had suffered damages as a result of the entry of water onto their property from the defendant's irrigation ditch. At trial, the plaintiffs recovered damages, including payment of expenses incurred to drain excess water from their property, malfunctioning of their sewage facilities, death of fruit trees and garden failure, as well as

mental anguish. The court based its upholding of recovery of damages for mental anguish on *Macca,* which it characterized as holding that "damages for mental anguish are recoverable in a negligence action when they are the result of [the] defendant's interference with the use and enjoyment of plaintiffs' land." 280 Or at 310. The *Edwards* court held that the defendant's negligence had interfered with the plaintiffs' interest in the use and enjoyment of their land. 280 Or at 309. The court further described the nature of the mental distress:

"The testimony in this case clearly reveals that the mental anguish for which plaintiffs recovered was the direct result of their concern for the damage to their property caused by defendant's negligence *and their attempts to minimize that damage. They were anguished over* the loss of the use of their laundry and bath facilities and *the necessity of spending hours attempting to drain their land,* and for other concerns caused by the entry of the water. * * *" 280 Or at 310. (Emphasis added.)

In a footnote the court unequivocally limited its holding to nuisance cases:

"Although we hold in this case that emotional distress damages may be recovered in an action for nuisance, we emphasize that our holding is limited to this particular species of case. The law involving recovery for emotional distress generally is confused and perhaps in need of rethinking by the courts. We have concluded, however, that this case does not provide a proper vehicle for reconsideration of the rules governing recovery for this type of injury." 280 Or at 310 n 4.

After *Macca,* this explicit limitation clearly indicates that recovery of damages for mental distress is to be determined, not according to the dictum in the *Macca* footnote, but according to the specie of case.

The confusion alluded to by the court in *Edwards* was remarked upon in *Mooney v Johnson Cattle, supra,* a case which extended recovery of damages for mental distress to actions for intentional interference with contract. Justice Linde reasoned that commercial or economic interests are not the only kinds of interests secured by the protection that the law affords to contractual relations, and he commented that the interest in one's occupation included "such non-economic values as personal association,

love of a place, and pride in one's work that add up to one's sense of identity." 291 Or at 717.

In *Mooney,* the court based its result on two theoretical grounds, by application of a Restatement rule and by analogy to employment relations. Restatement (Second) Torts, § 774(A)(1)(c) (1977), specifically provides for damages for mental distress in actions for intentional interference with contractual relations.[3] In rejecting the argument that the tort of intentional interference with contractual relations is designed to protect only pecuniary interests, the court compared the action with interference with employment relations, and concluded· that, for purposes of recovery of damages for mental distress, there was no critical distinction:

> "Again, mental distress has been included in damages for interference with one's employment; but too many crafts and trades rely on independent contracts as well as on contracts of employment, and the distinction is too tangential to the likelihood of anxiety and distress, to allow recovery for such consequences when the interference is with employment but exclude it for interference with business contracts as a matter of law. Rather, it remains open to show that they are common and predictable consequences of such interference in the type of business setting involved." 291 Or at 719.

It is apparent that the reasoning supporting the extension of damages for mental distress to actions for intentional interference with contract is expressed with reference to the particular specie of case involved: intentional interference with contract. Although the court does require that the damages be a "common and predictable" result of the interference, that requirement is a necessary ingredient in any claim, not the basis of the court's extension of the right.[4]

---

[3] The court in *Mooney v. Johnson Cattle,* 291 Or 709, 634 P2d 1333 (1981), departed in one particular from the Restatement rule, by holding that the mental distress "must be a common and predictable result of disrupting the *type* of relationship or transaction involved rather than a result 'reasonably to be expected' in the particular situation, as seems to be the import of section 774(A)(1)(c)." That change is consonant with the secondary test expressed in *Macca.*

[4] As noted earlier, the "common and predictable" language used in the opinions does not add anything to our understanding of when emotional distress damages are recoverable. Any interference with any legally protected right commonly and predictably results in some emotional distress.

The broad implications of the rule urged by plaintiff are that damages for mental distress become possible whenever property is damaged, whether intentionally or negligently. It is entirely common and predictable, for example, that a person will be disturbed and upset when someone negligently breaks the headlight of his or her cherished automobile or causes a softball to crash through a picture window. We do not *yet* live, however, in an "eggshell society" in which every harm to property interests gives rise to a right of action for mental distress. As Justice Peterson said in his dissent in *Mooney*, "A certain amount of emotional distress and anxiety is an unavoidable part of living in our complex society." 291 Or at 727. Some emotional upset is still left uncompensated. Extension of the right to recover damages for mental distress in a given case is basically a policy decision. The Supreme Court's extension of that right by species of case[5] is consonant with the reluctance of courts in general to give credence to mental distress claims absent some indication that they are real and not feigned. As Prosser notes,

> "The temporary emotion of fright, so far from serious that it does no serious harm, is so evanescent a thing, so easily counterfeited, and usually so trivial, that the courts have been quite unwilling to protect the plaintiff against mere negligence, where the elements of extreme outrage and moral blame which have had such weight in the case of the intentional tort are lacking." Prosser, Torts 328, § 54 (4th ed 1971). (Footnotes omitted.)

■ ■ This issue is before us in the posture of a pleading question. While a plaintiff need not plead more than he must prove, *Vanek v. Kirby,* 253 Or 494, 500, 450 P2d 778, 454 P2d 647 (1969), he must at least plead that which he

---

[5] In *Norwest v. Presbyterian Intercommunity Hosp., supra,* 293 Or at 558-59, the Supreme Court discussed recovery for psychic injury when a defendant's conduct infringes on some legally protected interest, even when done negligently. The court's discussion is consistent with the *ad hoc* approach exhibited in the cases, in the sense that no general rule is advanced, but rather, reliance is placed on prior decisions. For example, in discussing a child's attempting to recover damages for emotional distress when some one injures the child's parents, the court stated:

> "* * * Arguably, also, the child has rights in the parental relationship sufficiently like those asserted in *Hovis* and *McEvoy* to support a similar recovery for a psychic injury inflicted even by negligence.* * *" 293 Or at 559.

must prove as a minimum to recover damages for emotional distress. Plaintiff here pleaded only negligently caused damage to his property and no facts from which it may be inferred that defendant's conduct amounted to a private nuisance of the type occurring in *Macca* and *Edwards*. This case does not fall within the rule of *Macca* or *Edwards*. We decline to extend recovery of damages for mental distress to this particular specie of case.[6]

We conclude that the trial court did not err in striking the allegations of mental distress from the third amended complaint.

■ In the second assignment,[7] plaintiff contends that the trial court should not have dismissed the action on the ground that exclusive jurisdiction lies in district court for claims under $3,000, as provided in ORS 46.060(1)(a),[8] when a claim was made in excess of that amount at the outset of the case. Here, the first amended complaint set out causes of action for breach of warranty and negligence; the amount demanded in the *ad damnum* clause or prayer was $1,200 for property damage and $5,000 for inconvenience, annoyance and discomfort. After the allegation of

---

[6] The damages for inconvenience, annoyance and discomfort pleaded by plaintiff as general damages are adequately compensated by special damages for the cost of obtaining substitute living quarters and enhanced living expenses during their occupancy while the premises damaged are restored.

[7] Defendant contends that the trial court should have used the summary procedure for direct review by this court as set out in ORS 46.063(1):

"In any case where there is a dispute as to whether jurisdiction is in district court or some other court, the court before which the matter is pending shall refer the question to the Court of Appeals which shall decide the question of jurisdiction in a summary manner. The decision of the Court of Appeals on a question of jurisdiction shall be final."

In *Holmes v. Oregon Assn Credit Mgmt*, 52 Or App 551, 554 n 4, 628 P2d 1264 (1981), we noted that the procedure in ORS 46.063(1) is not the exclusive method to test subject matter jurisdiction. The question of the circuit court's subject matter jurisdiction is properly before us now for resolution.

[8] ORS 46.060 provides, in relevant part:

"(1) Except as provided in subsection (2) of this section, the district courts shall have exclusive jurisdiction in the following cases:

"(a) For the recovery of money or damages only when the amount claimed does not exceed $3,000. When, in such a case arising out of contract, the ends of justice demand that an account be taken or that the contract be reformed or canceled, the district court shall have jurisdiction to decree such accounting, reformation or cancellation."

mental distress damages was stricken from the third amended complaint, the trial court dismissed the action, because the claim set out in the fourth amended complaint was only for $1,200.

■ Whether the circuit court should dismiss a claim for damages that is reduced by pleadings or motions to an amount within the exclusive jurisdiction of the district court is a question of first impression.[9] *Cf. Springer v. Bowen,* 60 Or App 60, 652 P2d 863 (1982) (order of dismissal in circuit court proper where attorney fees are costs and not part of plaintiff's claim and hence not includable in jurisdictional amount). We perceive no benefit in forcing litigants to pursue their remedies in two forums. ORS 46.060(1)(a), *supra* n 8, provides that exclusive jurisdiction lies in the district court for claims under $3,000. The claim in this case was originally for greater than that amount. Even though the claim for mental distress damages was later properly withdrawn from the complaint, jurisdiction should remain in circuit court. We conclude that the circuit court here erred in dismissing this action.

Affirmed in part; reversed in part; remanded to circuit court for further proceedings.

**ROSSMAN, J.,** dissenting in part and concurring in part.

## MERITS

According to the majority, *"recovery of damages for mental distress absent physical injury is allowed where there is an independent basis of liability in certain [types*

---

[9] In *Class v. Carter,* 293 Or 147, 645 P2d 536 (1982), the Supreme Court held that when a commercial FED action filed in district court is transferred to circuit court under ORS 46.075 because of counterclaims filed in excess of the jurisdictional amount, despite the lack of statutory authorization for the filing of counterclaims in any amount in a commercial FED action, the circuit court retains jurisdiction even if the circuit court determines that the counterclaim should be stricken. The court stated:

"In FED cases, the circuit court does not sit as an appellate court over the district court. Once transferred, the circuit court alone has jurisdiction of the cause." 293 Or at 156.

The court expressly limited its holding to commercial FED cases. 293 Or at 157 n 8. The result in *Class v. Carter, supra,* however, is not inconsistent with the approach we adopt today.

*of] cases"*[1] (Emphasis in original.) and *only* in those types of cases, unless and until the Supreme Court adds to the list. Even if that conclusion is correct, a finding that the trial court erred in striking the allegations of mental distress in this case requires no extension of existing law. In *Edwards v. Talent Irrigation District,* 280 Or 307, 570 P2d 1169 (1977), the court held that where a party's negligence causes interference with another's use and enjoyment of real property, the injured party may recover for mental distress resulting from that interference. In that case, the plaintiffs brought an action in both negligence and trespass for damage suffered as a consequence of the entry of water onto their property, caused by seepage from the defendant's irrigation ditch. They prevailed on the negligence theory, recovering general damages for mental anguish and special damages. On appeal, the defendant contended that the trial court erred in refusing to strike the claim for damages for mental distress. The court held that the refusal to strike the allegation was not error:

> "* * * [P]laintiffs in this case do not base their claim solely upon the infliction of mental anguish. *The damages shown at trial by plaintiffs included expenses incurred to drain excess water from their property, malfunctioning of plaintiffs' sewage facilities, death of fruit trees, and garden failure, as well as mental anguish.*
>
> "*The damages proven* [sic] *by plaintiffs clearly indicate that defendant's negligence has interfered with plaintiffs' interest in the use and enjoyment of their land.* In *Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 418, 495 P2d 1193 (1972), we held that damages for mental anguish are recoverable in a negligence action *when they are a result of defendant's interference with the use and enjoyment of plaintiffs' land.* 262 Or at 419-420, and cases cited at 420, n 1. This also appears to be the rule in most jurisdictions that have considered the issue. Cases collected at Annotation, 28 ALR2d 1075, 1087 (1953).
>
> "The testimony in this case clearly reveals that *the mental anguish for which plaintiffs recovered was the direct result of their concern for the damage to their property caused by defendant's negligence and their attempts to minimize that damage.* They were anguished over the loss of the use of their laundry and bath facilities

---

[1] 60 Or App at 73.

and the necessity of spending hours attempting to drain their land, and for other concerns caused by the entry of the water. *We see no reason why defendants should not fully compensate plaintiffs for their injuries.* The trial court did not err in refusing to strike plaintiffs' claim for damages for mental anguish." 280 Or at 309-10. (Footnotes omitted; emphasis supplied.)

In this case, plaintiff alleged in his third amended complaint that:

"V.

"As a result of the fire in Plaintiff's residence, Plaintiff's property was damaged in the following respects:

"1. Irreparable damage to Plaintiff's wood stove.

"2. Smoke, heat and water damage to the ceilings and walls of Plaintiff's residence.

"3. Smoke, heat and water damage to Plaintiff's furniture and carpeting, requiring the repair or replacement thereof; which damages are in the sum of $2,253.14, of which $1,053.14 has been repaid to Plaintiff, all to Plaintiff's damage in the sum of $1,200.00.

"VI.

*"As a result of the fire* in Plaintiff's residence, *Plaintiff was subjected to inconvenience, annoyance and discomfort* and was damaged thereby in the sum of $5,000." (Emphasis supplied.)

The majority apparently believes that plaintiffs should have returned to the "drawing board" and alleged more facts. In my opinion, plaintiff's allegations, directly and by inference,[2] already describe an interference with the use and enjoyment of plaintiff's property comparable with that established in *Edwards v. Talent Irrigation District, supra.*[3] The claim could have been stated more

---

[2] *See* ORCP 12A:

"All pleadings shall be liberally construed with a view of substantial justice between the parties."

[3] The majority points out that the plaintiff has alleged no "ongoing interference." The smoke and water damage alleged raises the inference of an ongoing interference. In any event, as stated in Prosser, Torts 579-80, § 87 (4th ed 1971):

"It is sometimes said by courts and writers that a nuisance must involve the idea of continuance or recurrence over a considerable period of time. * * * *The proper statement would * * * appear to be that the duration or recurrence of the interference is merely one—and not necessarily a conclusive—factor in determining whether the damage is so substantial as to amount to a nuisance."* (Footnotes omitted; emphasis supplied.)

directly but, given plaintiff's description of the consequences of defendant's alleged negligence (a fire in the dwelling area of plaintiff's home causing "[s]moke, heat and water damage") and the nature of the allegations of the resulting mental distress ("inconvenience, annoyance and discomfort"),[4] the complaint sufficiently alleges such interference and that plaintiff's mental distress arose therefrom.[5] Any questions about the basis of plaintiff's claim for mental distress or the nature and extent of that distress could have been resolved by a motion and order to make more definite and certain. ORCP 21D.

Plaintiff's allegations bring this case within the exception to the "general rule" barring recovery. Plaintiff has alleged more than damage to property. He has alleged, expressly and by inference, that: (1) there exists an "independent basis of liability," *i.e.,* negligent injury to real property causing interference with its use and enjoyment and (2) his mental distress is the direct and natural result of defendant's wrongful act. Because of the disposition of the case below, no evidence has been adduced. Plaintiff may be unable to prove that the interference with his use and enjoyment was substantial or that his mental distress was "real and not feigned." However, I do not believe it can be said as a matter of law that "inconvenience, annoyance and discomfort" are *never* the direct, natural, "common and

---

[4] *See Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 420, 495 P2d 1193 (1972); *Lunda v. Matthews,* 46 Or App 701, 613 P2d 63 (1980).

[5] Although certainly in the usual case the interference is the consequence of an act or omission of the defendant that occurs somewhere other than on the plaintiff's property, *see, e.g., Lunda v. Matthews, supra,* n 4, the alleged interference with the plaintiff's interest in the use and enjoyment of his property is not rendered less substantial because the defendant's wrongful act occurred in plaintiff's home. Furthermore, as stated by the court in *Edwards v. Talent Irrigation District,* 280 Or 307, 309-10 n 2, 570 P2d 1169 (1977):

" 'Private nuisance is a field of tort liability. It is not a single type of tortious conduct * * *.

" 'Failure to recognize that private nuisance has reference to the interest invaded and not to the type of conduct which subjects the actor to liability has been a fertile cause of confusion. Thus, in respect to an interference with the use and enjoyment of land, attempts are made to distinguish between private nuisance and negligence, overlooking the fact that private nuisance has reference to the interest invaded and negligence to the conduct that subjects the actor to liability for the invasion.' 4 Restatement 220-221, Torts, Scope and Introductory Note to Chapter 40."

predictable results" of the specific wrongful act alleged here. Whether they are in this case would be more appropriately determined after plaintiff has had an opportunity to present evidence in support of his claim.[6]

Notwithstanding the above, I am not convinced that the rule applied by the majority either is or should be the standard in cases where there is no physical injury and a plaintiff seeks damages for mental distress. The majority seems to fear that, as a result of *any* departure from the rule it applies, the courts will be besieged by hordes of frenetic plaintiffs, each one claiming that some negligent scoundrel scratched the finish of his or her meticulously maintained sports car *and* that, as a result, he or she suffered mental distress, treatment for which required hospitalization, electro-shock sessions and group therapy. I agree with the majority's statement that damages for mental distress are inappropriate in cases not "involving an interference with the person beyond the inconvenience and distress always resulting from interference with property." (Slip opinion at 4.) However, the policy underlying that principle is served simply by requiring that the mental distress alleged be serious and not trivial. As stated in *Rodrigues v. State,* 52 Haw 156, 172-73, 472 P2d 509 (1970):

"* * * It is universally agreed that there are compelling reasons for limiting the recovery of the plaintiff to claims of *serious* mental distress. The reasons offered to limit recovery are that mental distress of a trivial and transient nature is part and parcel of everyday life in a community, that under certain circumstances social controls may deal more effectively with mental distress, that some kinds of mental distress may have a beneficial therapeutic effect, that the law should not penalize the 'prime mover' in society nor curry to neurotic patterns in the population.

---

[6] In the majority of Oregon cases in which the question has been considered, the Supreme Court and this court had the benefit of an evidentiary record in making the decision whether damages for mental distress could be recovered. *See e.g., Mooney v. Johnson Cattle,* 291 Or 709, 634 P2d 1333 (1981); *Melton v. Allen,* 282 Or 731, 580 P2d 1019 (1978) (summary judgment); *Edwards v. Talent Irrigation District, supra,* n 5; *Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974); *Macca v. Gen. Telephone Co. of N.W., supra,* n 4; *Douglas v. Humble Oil,* 251 Or 310, 445 P2d 590 (1968); *Hovis v. City of Burns,* 243 Or 607, 415 P2d 29 (1966); *Lunda v. Matthews, supra,* n 4; *Senn v. Bunick,* 40 Or App 33, 594 P2d 837, *rev den* 287 Or 149 (1979).

> \* \* \* We propose a standard similar to that adopted by the Restatement with regard to the intentional infliction of mental distress. *See* Restatement Second, Torts § 46 comment j at 77 \* \* \* [and] hold that serious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." (Emphasis in original; citations omitted.)

The failure of plaintiff to state a rule that insures against future inappropriate claims for damages for mental distress should not prevent our considering the validity of *this* claim.

Although I agree with the majority's rejection of plaintiff's argument that "whenever a wrongful act gives rise to tort liability, mental suffering is compensable," I do not believe that the majority's listing of the "certain [types of] cases" in which recovery will be allowed should be deemed final and exclusive. The treatment of those "exceptions" to the general rule by the court in *Rodrigues v. State, supra,* 52 Haw at 170-71, avoids the problems inherent in both of those positions:

> "We begin with the proposition that the interest in freedom from the negligent infliction of mental distress has in fact been protected whenever the courts were persuaded that the dangers of fraudulent claims and undue liability of the defendant were outweighed by assurances of 'genuine and serious' mental distress. *Cf.* Prosser, *supra,* § 55 at 348. In drawing exceptions to the rule of no recovery, the courts have found such assurances in an accompanying physical injury or impact, host cause of action, or special factual pattern.
>
> "\* \* \* \* \*
>
> "As we have noted, the principle to be extracted from the exceptions is that they involve circumstances which guarantee the genuineness and seriousness of the claim. The better view is to treat such exceptions as examples of trustworthy claims deserving of legal redress and not as restrictions on the plaintiff's right to recover.\* \* \*"

Such an approach is not inconsistent with the Oregon decisions involving claims for mental distress where there exists an independent basis of liability. In *Hinish v. Meier & Frank Co.,* 166 Or 482, 506, 113 P2d 438 (1941) (claim for

mental distress resulting from an invasion of privacy), the court held:

> "* * * [I]t is well settled that where the wrongful act constitutes an infringement of a legal right, mental suffering may be recovered for, if it is the direct, proximate and natural result of the wrongful act: *Larson v. Chase,* 47 Minn. 307, 310, 50 N.W. 238, 28 Am. St. Rep. 370, 14 L.R.A. 85; 17 C.J. Damages, 828, § 151. Violation of the right of privacy is a wrong of *that* character." (Emphasis supplied.)

The principle is also stated in *Macca v. Gen. Telephone Co. of N.W., supra,* 262 Or 414, 420 n 1, 495 P2d 1193 (1972) (erroneous listing of a phone number resulting in interference with use and enjoyment of property). In *Larson v. Chase,* 47 Minn 307, 310-12, 50 NW 238 (1891), the source of the rule stated in *Hinish,* the court explained:

> "* * * There has been a great deal of misconception and confusion as to when, if ever, mental suffering, as a distinct element of damage, is a subject for compensation. This has frequently resulted from courts giving a wrong reason for a correct conclusion that in a given case no recovery could be had for mental suffering, placing it on the ground that mental suffering, as a distinct element of damage, is never a proper subject of compensation, when the correct ground was that the act complained of was not an infraction of any legal right, and hence not an actionable wrong at all, or else that the mental suffering was not the direct and proximate effect of the wrongful act. * * * *Wherever the act complained of constitutes a violation of some legal right of the plaintiff, which always, in contemplation of law, causes injury, he is entitled to recover all damages which are the proximate and ·natural consequence of the wrongful act. That mental suffering and injury to the feelings would be ordinarily the natural and proximate result of knowledge that the remains of a deceased husband had been mutilated is too plain to admit of argument. * * *"* (Emphasis supplied.)

To the same effect, *see Hovis v. City of Burns,* 243 Or 607, 415 P2d 29 (1966) (holding that plaintiff had a cause of action of mental distress because of the wrongful disinterment of husband's body). *See also McEvoy v. Helikson,* 277 Or 781, 788-89, 562 P2d 540 (1977) (negligence resulting in infringement of plaintiff's legal right to custody of his

child) and cases cited therein; *Douglas v. Humble Oil,* 251 Or 310, 317, 445 P2d 590 (1968) (mental distress compensable in action for trespass and conversion where evidence revealed that plaintiff was "understandably disturbed by the experience").

I am not convinced that allowing plaintiff the opportunity to prove the claimed damages for mental distress would require a departure from the principles expressed in the decisions noted above. Furthermore, denial of that opportunity in this case is demonstrably unreasonable. Had the fire involved here started on defendant's property and, because of defendant's negligence, spread to plaintiff's property causing *precisely the same damage plaintiff has alleged,* presumably it would have been error for the trial court to allow a motion to strike the allegations of mental distress because those damages *may* be recovered in actions for trespass and nuisance. I can see no purpose or logical basis for such a distinction;[7] therefore, I disagree with the majority's conclusion that recovery for mental distress is or should be restricted to those "certain [types of] cases" listed by the majority and with its holding that mental distress can *never* result from the tortious conduct and resulting damages alleged here.

For these reasons I cannot join in the majority's decision that it was error to strike the claim for mental distress.

## JURISDICTION

Plaintiff contends that the trial court should not have dismissed the action on the ground that exclusive jurisdiction lies in district court for claims under $3,000 when, as here, a *good faith claim* was made in excess of that amount at the outset of the case.

As the majority observes, whether the circuit court should dismiss a claim for damages that is reduced by pleadings or motions to an amount within the exclusive jurisdiction of the district court is a question of first impression. In federal practice, when the amount in controversy has fallen below the jurisdictional limit as a result

---

[7] *See* discussion n 5, *supra.*

of actions taken at the pleading stage, jurisdiction is determined by the amount of the original claim:

> "The fact that there is an apparently valid defense to all or a part of the amount claimed will not destroy federal jurisdiction over the claim. For example, the fact that a cause of action might be barred by a statute of limitations does not remove jurisdiction from the federal court to hear the action. Nor does a defense of the statute of limitations to all or part of the value of the amount claimed affect the jurisdictional basis of this amount in controversy. A defense to the amount claimed might not be raised in the trial on the merits, and even if raised may be shown to be invalid. And a court should not confuse the determination of its jurisdiction with an adjudication on the merits of the validity of the amount claimed. Even if part of the claim is dismissed by summary judgment on the issue of statute of limitations, thereby reducing the remainder to an amount lower than the jurisdictional minimum, the court still has jurisdiction to adjudicate the rest of the claim." 1 Moore's Federal Practice at 864-65 (2d ed 1982). (Footnotes omitted.)

The federal rule thus appears to be that when an initial claim in excess of the jurisdictional amount is reduced at the pleading stage, the court will nonetheless continue to adjudicate the claim. At least one other jurisdiction with a state court system similar to ours has adopted this approach. *See Joslyn v. Professional Realty,* 622 P2d 1369, 1373-74 (Wyo 1981).

I would adopt a similar approach, because it seems likely to promote efficient use of the court system and would provide a helpful tool to our trial judges, who often confront this problem. The problem of litigants praying for inflated damages in order to boost their cases out of district court into circuit court should be adequately controlled by the requirement that the initial claim be made *in good faith,* that is, that it not appear on its face to be made solely to gain circuit court jurisdiction. Unlike the majority, I would adopt the good faith requirement of the federal rule, although I concur in the majority's decision that the circuit court here erred in dismissing this action.