Submitted November 28, 2022, affirmed July 26, 2023

Duane DUCKWORTH
and Kathy Duckworth,
*Plaintiffs-Appellants,*

*v.*

Ruth DUCKWORTH,
Individually and as Trustee of the
Ruth Duckworth Living Trust
u/a/d (March 21, 2006),
*Defendant-Respondent.*

Jackson County Circuit Court
16CV36652; A176530

534 P3d 1076

As part of a familial dispute over a motel property, plaintiffs brought this action for breach of contract, fraud, quiet title, and wages. The trial court granted summary judgment for defendant on the first three claims based on issue preclusion. Specifically, the trial court concluded that whether plaintiffs had an ownership interest in the motel property was an issue that had already been raised and decided in a prior forcible entry and detainer (FED) action between the same parties; that the FED judgment was preclusive on that issue; and that plaintiffs' first three claims therefore failed as a matter of law. The wage claim proceeded to trial, and, at the close of plaintiffs' evidence, the trial court dismissed that claim under ORCP 54 B(2). On appeal, plaintiffs challenge the summary judgment ruling, arguing that the FED court lacked jurisdiction to decide a title dispute and that the FED judgment should not be given preclusive effect as to a title dispute. They also challenge the ruling on the wage claim. *Held*: The trial court did not err in granting summary judgment on three of plaintiffs' claims based on issue preclusion. Upon consideration of the history of FED law in Oregon, the Court of Appeals held that circuit courts hearing FED actions have jurisdiction and authority to decide title disputes in an FED action. The Court of Appeals further concluded that the requirements for issue preclusion were met in this case. Finally, the Court of Appeals concluded that the trial court did not err in dismissing the wage claim under ORCP 54 B(2).

Affirmed.

Timothy C. Gerking, Judge.

Michael W. Franell filed the briefs for appellants.

Charles F. Lee and Charles F. Lee P.C. filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Plaintiffs Duane and Kathy Duckworth appeal a judgment dismissing their civil claims against defendant Ruth Duckworth.[1] The parties' dispute centers around a motel property in Medford that was originally purchased by Paul Duckworth, now deceased, who was Duane's father and Ruth's husband. For many years, plaintiffs lived at the property and managed the motel. Defendant ended that arrangement in 2016 and evicted plaintiffs in a forcible entry and detainer (FED) action. Plaintiffs later brought this action for breach of contract, fraud, quiet title, and wages. The trial court granted summary judgment for defendant on the first three claims, based on the FED judgment being preclusive that Duane and his father did not have an enforceable oral agreement regarding ownership of the property. The court dismissed the wage claim under ORCP 54 B(2). Plaintiffs challenge those rulings on appeal. We affirm.

## I.   FACTS

Paul Duckworth purchased the Bear Creek Motel in Medford in the 1980s. The property was put into trust around 1987. Starting in approximately 1992, Duane managed the motel and lived at the property. Duane later married Kathy, who moved onto the property and assisted with managing the motel. Paul died in 2005. After Paul's death, the property was transferred by deed from the Paul L. Duckworth Trust to the Ruth Duckworth Living Trust. Things otherwise continued as they were until 2016, when the parties got into a dispute over the property being cited for an environmental violation. Defendant sent a letter to plaintiffs terminating Duane as manager of the motel and terminating their work-related occupancy of the premises.

When plaintiffs did not vacate the premises, defendant filed an FED action under ORS 91.120, which allows for the use of FED proceedings to evict an "employee described in ORS 90.110(7)," that is, "an employee of a landlord whose

---

[1] The parties have had different designations in different proceedings. To avoid confusion, we use their trial court designations in the current litigation at all times, regardless of which proceeding or stage of proceeding we are discussing. We also use first names as needed, because everyone involved shares the same last name.

right to occupancy is conditional upon employment in and about the premises." Plaintiffs immediately filed a civil action to quiet title to the property and moved to abate the FED action pending resolution of the quiet-title litigation. Defendant objected to abatement. While the motion was pending, plaintiffs answered in the FED action, including asserting as an "affirmative defense" that Duane owned the motel property under an oral agreement with his father and therefore could not be evicted. The FED court denied the abatement motion. At the FED trial, Duane testified to an oral agreement with his father (the terms of which changed over time), and plaintiffs also offered evidence of property tax payments, utility payments, and business records to try to prove partial performance.

The FED court ultimately entered a judgment for defendant. In support of that judgment, the FED court found that defendant was the title owner of the property by deed. It further found that Duane was the motel manager and lived at the property with his wife Kathy; that defendant had terminated Duane as motel manager and terminated his and his family's work-related occupancy of the property in March 2016; and that plaintiffs failed to vacate the premises. The FED court rejected on multiple alternative grounds plaintiffs' "affirmative defense" that Duane owned the property under an oral agreement with his father. It found that Paul lacked authority to agree to sell the property; that Duane's testimony was not credible; that the terms of the alleged oral agreement were "so uncertain that, if true, they are unenforceable"; and that any oral agreement was void under the statute of frauds in any event.

Plaintiffs did not appeal the FED judgment. Instead, they filed this civil action, asserting claims for quiet title, breach of contract, fraud, and wages.[2] Plaintiffs alleged that Duane owned the motel property under an oral agreement with his father (quiet title); that defendant breached the oral agreement (breach of contract); that defendant was a party to fraud to the extent that Paul lacked authority to enter into the oral agreement (fraud); and that, if the oral

---

[2] Plaintiffs' first quiet-title action—the one filed immediately after commencement of the FED action—was dismissed for want of prosecution. This is a different action.

agreement was unenforceable, then plaintiffs were at least entitled to unpaid wages for their work at the motel.

Defendant moved for summary judgment on the quiet title, breach of contract, and fraud claims. As relevant here, defendant argued that the FED court had already decided that there was no enforceable agreement between Duane and his father and that such finding was entitled to preclusive effect under the doctrine of issue preclusion. Plaintiffs opposed summary judgment, arguing that issue preclusion did not apply because an FED court has no authority to resolve title disputes. The trial court agreed with defendant that issue preclusion applied and, on that basis, granted summary judgment for defendant on plaintiffs' first three claims.

The case proceeded to a bench trial on the wage claim. At the close of plaintiffs' evidence, defendant moved to dismiss. The court granted the motion under ORCP 54 B(2), stating that plaintiffs had failed to prove that they worked as employees rather than copartners or independent contractors, had failed to prove a right to payment at a fixed rate, and had failed to prove damages cognizable in a wage claim action.[3]

Plaintiffs appeal, challenging both the summary judgment ruling and the involuntary dismissal ruling.[4]

## II.  SUMMARY JUDGMENT RULING (ISSUE PRECLUSION)

Plaintiffs contend that the trial court erred in granting summary judgment on their quiet title, breach of

---

[3] In moving to dismiss, defendant did not specify the legal authority for her motion. The trial court stated orally that it was granting "directed verdict" but, in the general judgment, clarified that it understood defendant to have moved under ORCP 54 B(2) and granted the motion under ORCP 54 B(2). The judgment is controlling.

[4] The opening brief does not assign error to specific rulings as required by ORAP 5.45 and illustrated in Appendix 5.45. Properly assigning error serves important purposes. *Village at North Pointe Condo. Assn. v. Bloedel Constr.*, 278 Or App 354, 359, 374 P3d 978, *adh'd to as modified on recons*, 281 Or App 322, 383 P3d 409 (2016). Nonetheless, if a claim of error is discernible, we will typically address it. *Id.* at 361. Here, based on plaintiffs' four "questions presented on appeal," we understand plaintiffs to assign error to the summary judgment ruling and to the ORCP 54 B ruling.

contract, and fraud claims. They argue that the FED court lacked jurisdiction or authority to decide the title dispute and that, consequently, it was error to give preclusive effect to the FED court's finding that no enforceable agreement existed between Duane and his father. Defendant responds that FED courts can resolve ownership disputes attendant to deciding possession and that such findings are entitled to preclusive effect in a civil action such as this one.

"We review a trial court's grant of summary judgment for errors of law and will affirm if there are no genuine disputes about any material fact and the moving party is entitled to judgment as a matter of law." *Beneficial Oregon, Inc. v. Bivins*, 313 Or App 275, 277, 496 P3d 1104 (2021) (internal quotation marks omitted); *see also Berg v. Benton*, 297 Or App 323, 327, 443 P3d 714 (2019) ("We review whether the trial court erred in applying issue preclusion for errors of law.").

A.   *General Overview of Oregon FED Law*

We begin our discussion with a brief general overview of FED law in Oregon, as a basic understanding of this area of the law and its history provides a helpful foundation for understanding the specific legal issue that we address in this opinion.

FED procedures have existed in Oregon since territorial days, and they are purely a creature of statute. *Thompson v. Wolf*, 6 Or 308, 308 (1877). At common law, "the only means of trying the right to the possession of property" was an ejectment action, wherein the court could "determine the question of which party has the paramount legal title to the premises for the purpose of determining who has the right to possession." *Olds Bros. Lumber Co. v. Rushing*, 64 Ariz 199, 203-04, 167 P2d 394, 397 (1946) (citing 28 CJS, Ejectment §§ 4, 5, 7-10 at 850-58); *see also Thompson*, 6 Or at 311 (in a common-law ejectment action, "it is necessary that the plaintiff set forth the nature of his estate in the property, whether it be in fee, for life, or for a term of years, thereby enabling the courts to settle the question of title, which is the great end of the action of ejectment" (internal citation omitted)).

As discussed more below, FED laws were first enacted in feudal England to stem violent land disputes, and they appeared among the earliest American statutes. Like all FED laws, the purpose of Oregon's FED procedure "is to provide an orderly means of obtaining possession of premises without an actual breach of the peace." *Crossen v. Campbell*, 102 Or 666, 676, 202 P 745 (1921); *see also Friedenthal v. Thompson*, 146 Or 640, 643, 31 P2d 643 (1934) (explaining that FED "was intended as an expeditious method to obtain possession of real property that was being withheld from the owner by force * * * and provided a special procedure for the trial of such causes").

FED actions are currently governed by ORS 105.105 to 105.168. An FED action may be maintained against a person who unlawfully entered premises, or against a person who lawfully entered premises but now holds possession unlawfully by force. ORS 105.110. "Unlawful holding by force" is statutorily defined and, modernly, does not require physical force or threat thereof. ORS 105.115(1) (describing what constitutes "holding by force"); *see also Twiss v. Boehmer*, 39 Or 359, 362, 65 P 18 (1901) (recognizing the principle of "constructive" force in connection with FED).

Historically, the concept of unlawful holding by force (as distinct from unlawful entry) was limited to landlord-tenant relationships. *Schroeder v. Woody*, 166 Or 93, 97, 109 P2d 597 (1941) (stating that "unlawful holding by force" in FED statute "refers only to cases where the relation of landlord and tenant exists"). Basically, the quick procedure of FED could be used to evict a person who entered premises unlawfully or a tenant who entered lawfully but held the premises unlawfully; otherwise, disputes over possession of real property had to be resolved in a common-law ejectment or trespass action. *Purcell v. Edmunds*, 175 Or 68, 70, 151 P2d 629 (1944) ("The summary remedy given by statute for the forcible entry and detainer of land is not a substitute for an action of trespass or ejectment[.]").

Over time, the Oregon legislature has authorized the use of FED procedures in certain circumstances regardless of whether a landlord-tenant relationship exists. Most pertinently, a landlord may use FED procedures to evict

an employee whose right to occupy premises was "conditional upon employment in and about the premises," ORS 90.110(7), and who "remains in possession after the expiration of a valid notice terminating the person's right to occupy the premises," ORS 105.115(1)(g). Such a person is considered to unlawfully hold the premises by force, ORS 105.115(1)(g), and may be evicted in an FED action, ORS 91.120 ("An employee described in ORS 90.110(7) may only be evicted pursuant to ORS 105.105 to 105.168 after at least 24 hours' written notice of the termination of employment or a notice period set forth in a written employment contract, whichever is longer."). Using FED procedures in such circumstances "does not create the relationship of landlord and tenant between a landlord and such employee." ORS 91.120.

Another circumstance of some relevance—because we will later discuss case law regarding it—is that the Oregon Trust Deed Act (OTDA) allows the purchaser of real property at a trustee's sale to use FED procedures to evict a "tenant at sufferance," *i.e.*, a person who "remains in possession after the 10th day [after the trustee's sale] under any interest, except an interest prior to the trust deed, or an interest the grantor or a successor of the grantor created voluntarily[.]" ORS 86.782(6)(a) (providing for the purchaser to "obtain possession of the property from a tenant at sufferance by following the procedures set forth in ORS 105.105 to 105.168").

Because FED proceedings are designed to be quick and summary, counterclaims generally are not allowed, unless expressly permitted by statute. ORS 105.132. The counterclaims permitted by statute are limited. *See, e.g.*, ORS 90.370 (counterclaims for rent); ORS 90.375 (damages for unlawful ouster or willful diminution of services); ORS 90.380 (damages for building or housing code violations).

Defendants in Oregon FED actions are entitled, however, to present defenses relevant to possession. *Hughes v. Ephrem*, 275 Or App 477, 486, 365 P3d 613 (2015) (holding that the trial court correctly allowed the defendant in an FED action to raise an equitable defense that, if proved, would defeat the plaintiffs' right to possession); *Schmidt v. Hart*, 237 Or App 412, 421, 241 P3d 329 (2010), *rev den*, 350

Or 130 (2011) (although an FED proceeding is limited to determining the right to possession, the defendant is entitled to present defenses relating to the right to possession).

Oregon is unusual in allowing equitable defenses to be raised in FED, and the history of that practice provides a good example of the complicated history of many aspects of FED procedure in Oregon. "The general rule in [FED] cases is that equitable defenses may not be raised, and that a defendant who depends upon equitable defenses must bring an original suit in equity, by which the [FED] action may be stayed and a final determination had of the respective rights of the parties in relation to the property." *Leathers et ux. v. Peterson*, 195 Or 62, 66, 244 P2d 619 (1952). In Oregon, however, when courts were historically divided between "law" and "equity," a statute expressly permitted the defendant in an action at law to raise equitable defenses in their answer, rather than having to file a complaint on the equity side of the court—and that statute was understood to apply to both ordinary actions and special proceedings such as FED. *Id.* at 66-67.

In 1934, the Supreme Court acknowledged that the statute allowing equitable defenses to be raised in the answer in an action at law had been silent about its applicability to special proceedings since 1917, when a statutory amendment was made. *Friedenthal*, 146 Or at 645. The court nonetheless held that equitable defenses were available in an FED action, because "the practice has been that, when an action of forcible entry and detainer is filed in the circuit court, the defendant may set up an equitable defense, and this practice has received the sanction of this court." *Id.*; *see also Leathers*, 195 Or at 66-67 (discussing same). In other words, the court allowed the practice to continue, despite the lack of express statutory language. Nearly 70 years later, in 2002, the court employed the opposite reasoning, relying on the statutory silence itself to explain why an equitable defense could be raised in an FED action: "We perceive no reason to allow the equitable defense of excusable neglect in an original proceeding in equity, but to deny it in an FED case. Certainly, nothing in the FED statutes suggests that a party may not raise equitable defenses in a statutory FED

action." *2606 Building v. MICA OR I Inc.*, 334 Or 175, 185, 47 P3d 12 (2002).

B.   *Resolution of Title Issues in FED Actions*

The key legal issue on appeal is whether and to what extent Oregon circuit courts have authority to resolve title disputes in FED actions. On that issue, plaintiffs and defendant rely on a small number of cases to argue their respective positions. Plaintiffs quote from the Supreme Court's 1941 decision in *Schroeder*, 166 Or at 96, and point to two of our decisions—*Balboa Apartments v. Patrick*, 237 Or App 391, 241 P3d 317 (2010), *aff'd*, 351 Or 205, 263 P3d 1011 (2011), and *Kerr v. Jones*, 193 Or App 682, 91 P3d 828 (2004)—to argue that circuit courts lack "subject matter jurisdiction" to decide title disputes in FED actions, such that any ruling on title in an FED action is legally invalid and not a proper subject of issue preclusion. In response, defendant relies on *Lawton v. Simpson*, 133 Or App 489, 891 P2d 1371 (1995), and an unpublished federal district court case, to argue that courts are free to decide title in an FED action when doing so is a necessary predicate to deciding possession.

From that starting point, we embarked on a long and arduous journey through 179 years of Oregon FED statutes and case law. We began that journey confident that, because FED is a creature of statute, the historical statutes and case law would inevitably reveal the origins of the oft-cited principle that title to property cannot be adjudicated in an FED action, at which point it would be a relatively simple matter to determine whether that principle still applies today. We end the journey less convinced. We nonetheless must answer the question, which requires providing a highly condensed overview of what we found.

1.   *The first 133 years of Oregon FED law (1844-1977)*

FED proceedings find their origin in English law. In 1166, King Henry II instituted statutes "designed to regulate self-help evictions," by creating a "summary remedy granting legal protections of the possession of real property" to "discourage forcible entry and minimize violence." Luis Jorge DeGraffe, *The Historical Evolution of American*

*Forcible Entry and Detainer Statutes*, 13 Seton Hall Legis J 129, 133-34 (1990). Later, King Richard II enacted the Forcible Entry Act of 1381, making forcible entry a criminal offense. *Id.* at 134. By the 1800s, FED procedures were quite familiar, and they were frequently included among the earliest territorial and state laws in the United States. *See Smith v. Reeder*, 21 Or 541, 546-49, 28 P 890 (1892) (discussing the history of FED, including describing the Oregon statute as largely "the same as the original forcible entry and detainer act of 5 Rich. II, after which the statutes in most of the states are modeled").

Oregon's FED law dates back to 1844, when the provisional government generally adopted "[a]ll the statute laws of Iowa Territory passed at the first session of the Legislative Assembly of said Territory," including Iowa's FED law. Laws of a General and Local Nature Passed by the Legislative Committee and Legislative Assembly [of the Oregon Provisional Legislature], An Act regulating the Executive Power, the Judiciary, and for other purposes, Article III, § 1, p 100 (Bush 1853) ("1844 Oregon Act"). The Iowa statute provided for FED actions to be heard by justices of the peace and tried to a jury. The Statute Laws of the Territory of Iowa, An act to prevent forcible entry and detainer, § 3, p 231 (Russell & Reeves 1839) ("1839 Iowa Act"). Although Iowa's FED statute was silent as to title disputes, the fact that FED actions were to be heard by justices of the peace, who had limited jurisdiction, created a *de facto* limitation: "No justice of the peace shall have cognizance *** [o]f any action, where the title to lands and tenements shall come in question." The Statute Laws of the Territory of Iowa, An act to provide for the appointing of Justices of the Peace, to prescribe their powers and duties, and to regulate their proceedings, Article II, § 3, p 303 (Russell & Reeves 1839).

It is not entirely clear, but it appears that the same *de facto* limitation applied in Oregon. An Oregon law enacted in December 1844 gave circuit courts "concurrent jurisdiction with justices of the peace" in FED cases. Laws of a General and Local Nature Passed by the Legislative Committee and Legislative Assembly, An Act Amendatory

of an Act passed June 27, 1844, entitled "An Act regulating the Executive Power, the Judiciary, and for other purposes," § 1, p 84 (Bush 1853). However, it appears that circuit courts may have exercised only appellate jurisdiction in FED cases. *See* 1844 Oregon Act, at Article II, § 3, p 99 (giving the circuit courts "original jurisdiction" in all cases in law and equity in which a party was seeking $150 or more, and "appellate jurisdiction from justices of the peace"); *id.* § 10, p 100 (giving justices of the peace "jurisdiction in all civil cases in all sums not exceeding [$150]").

Notably, although in modern FED actions it is generally the possessor of the premises (*e.g.*, the tenant) who is alleged to have entered or held by force—and the force is usually constructive in nature—FED laws originated in response to physical violence and threats of violence by landlords against tenants. DeGraffe, 13 Seton Hall Legis J at 135-36. Those origins are evident in Oregon's first FED statute (adopted by cross-reference to the Iowa statute), which was focused on physical force and addressed violence by either party:

"Sec. 1. *** [N]o person shall hereafter make any entry into lands, tenements, or other possessions, but in cases where entry is given by law; and in such cases not with strong hand, nor with multitude of people, but only in a peaceable and easy manner; and if any person from henceforth do to the contrary, and therefore be duly convicted, he shall be punished by fine.

"Sec. 2. If any person shall enter upon or into any land, tenements, or other possessions, and detain and hold the same with force or strong hand, or with weapons, or breaking open the doors or windows, or other part of a house, whether any person be in or not, or by threatening to kill, maim, or beat the party in possession, or by such words or actions as have a natural tendency to excite fear, or apprehension of danger, or by putting out of door, or conveying away the goods of the party in possession, or by entering peaceably and then turning out by force, or frightening by threats or other circumstances of terror, or in any other way that would be a forcible entry or detainer at common law, the party out of possession, in such case every person so offending shall be deemed guilty of a forcible entry and detainer within the meaning of this act.

"Sec. 3. That a justice of the peace shall have authority to enquire by jury, as hereafter directed, as well against those who make unlawful and forcible entry into lands, tenements, or other possessions, and with strong hand detain the same, as against those who, having lawful and peaceable entry into lands, tenements, or other possessions, unlawfully and by force detain the same, and if it be found upon such enquiry that an unlawful and forcible entry hath been made, and that the same lands, tenements, and other possessions are held and detained by force and strong hand, or that the same, after a lawful entry, are held unlawfully and with force and with strong hand, then such justice shall cause the party complaining to have restitution thereof."

1839 Iowa Act, §§ 1-3, p 231-32 (source of quotation); 1844 Oregon Act, Article III, § 1, p 100 (adopting 1839 Iowa Act as Oregon law).

In 1850, Oregon's territorial legislature drafted its own FED statute, which replaced the Iowa statute. The 1850 statute conceived of FED in the same way, and it contained some similar provisions, such as FED actions being heard by a justice of the peace and tried to a jury. However, the 1850 statute also contained new details and provisions, such as requiring written notice to evict tenants:

"Sec. 1. No person shall enter upon or into any lands, tenements, or other possessions, and detain or hold the same but where entry is given by law, and then only in a peaceable manner.

"Sec. 2. If any person shall enter upon or into any lands, tenements, or other possessions, and detain and hold the same with force or strong hand, or with weapons, or breaking open the doors and windows, or other parts of a house, whether any person be in it or not, or by threatening to kill, maim, or beat the party in possession, or by such words or actions as to have a natural tendency to excite fear or apprehension of danger, or by putting out of doors or carrying away the goods of the party in possession, or by entering peaceably and then turning out by force, or frightening by threats, or other circumstances of terror, the party to yield possession, in such case every person so offending shall be deemed guilty of a forcible entry and detainer, within the meaning of this act.

"Sec. 3. When any person shall willfully and with force, hold over any lands, tenements or other possessions, after the determination of the time for which they were demised or let to him, or the person under whom he claims, or shall lawfully and peaceably obtain possession, but shall hold the same unlawfully and by force, and after demand made in writing for delivery of possession thereof, by the person having the right to such possession, his agent or attorney, shall refuse or neglect to quit such possession, such person shall be deemed guilty of an unlawful detainer.

"* * * * *

"Sec. 17. When the jury is sworn, the justice of the peace shall cause the complaint to be read to them, and then call on the plaintiff to support the same; but the plaintiff shall not be required to make further proof the forcible entry and detainer, (or unlawful detainer,) than that he was lawfully possessed of the premises, and that the defendant unlawfully entered into and detains the same, (or lawfully entering, unlawfully detains.)

"Sec. 18. If the jury on the trial find the defendant guilty, the justice of the peace shall record the verdict, and give judgment thereon with costs, and also issue a writ of restitution directed to the sheriff or constable, to cause the plaintiff to be repossessed, to which shall be added a clause commanding the officer to levy the costs of the goods and chattels of the defendant."

Acts of the Legislative Assembly of the Territory of Oregon, Justices of the Peace, Article XII, Forcible Entry and Detainer, pp 54-57 (Moore 1850).[5]

Most importantly for present purposes, the 1850 statute included a new provision expressly prohibiting inquiries into the merits of title in an FED action:

---

[5] It was apparently the practice that the justice of the peace's decision in an FED action could be appealed to the circuit court, even when the FED statute did not expressly provide for such an appeal. *See Wolfer v. Hurst*, 47 Or 156, 161, 82 P 20 (1905) (denying motion to dismiss appeal of circuit court judgment reviewing justice court's FED judgment, because "the right to an appeal in such cases is fairly to be inferred from the statute," and "the cause of justice would * * * be promoted by continuing the practice so long observed"); *Twiss*, 39 Or at 360 (stating, in 1901, "This is an action of forcible entry and detainer, commenced in a justice's court, and appealed to the circuit court * * *."); *Thompson*, 6 Or at 308 (stating, in 1877, that "justices of the peace are invested with jurisdiction" in FED actions and that "the right of appeal is given to Circuit Courts"). As previously noted, earlier Oregon statutes *had* expressly provided for circuit courts to hear appeals from decisions of justices of the peace. *See* 1844 Oregon Act, Article II, § 3, p 99 (giving the circuit courts "appellate jurisdiction from justices of the peace").

"Sec. 23. The estate or the merits of the title shall in no wise be inquired into on any complaint which shall be exhibited by virtue of this act."

*Id.* at p 57.

One of the earliest published decisions of the Oregon Supreme Court enforced the foregoing limitation on FED actions. In *Shortess v. Wirt*, 1 Or 90, 90 (1854), the deceased's land claim was sold at an administrator's sale and eventually came into the defendant's possession. The guardian of the deceased's minor children sued for unlawful detainer, asserting that the children had title and that the administrator's sale was void. *Id.* The court concluded that it would be "impossible to sustain this action without inquiring into 'the merits of the title' to the [land] claim in question," given that the "whole case" reduced to "a question as to the validity of conflicting titles." *Id.* at 91. That was deemed "fatal to the action." *Id.* "The sole object of this [FED] action is to determine the right of immediate possession to real estate, without reference to title, and to hold otherwise would be to allow justices of the peace to adjudicate titles to land contrary to the express provisions of the organic act." *Id.*

Similarly, in *Altree v. Moore*, 1 Or 350, 352 (1861), the court noted that, in an FED action, a defendant cannot claim title as a defense and that if "he, defendant, have a title paramount, he must assert it in a different manner." In *Aiken v. Aiken*, 12 Or 203, 207-08, 6 P 682 (1885), the court reversed an FED judgment and "remanded to the circuit court with directions to dismiss it for the want of jurisdiction of the justice's court, and of [the circuit] court, upon appeal," where the plaintiff widow claimed title to land through her husband, who had title before his death, and title was "necessarily litigated" and "effectually tried" in deciding possession.

The provision prohibiting inquiry into the merits of title in an FED action remained in the Oregon FED statute until 1909, when the legislature did a major statutory overhaul. The provision regarding title inquires was removed. Or Laws 1909, ch 185, § 29. Circuit courts also were expressly given jurisdiction of FED actions. *Id.*; Lord's Oregon Laws, title XLVIII, ch XVIII, § 7568 (1910) (allowing

an FED action to be maintained "in the circuit court of [the county in which the property is situated], or before any justice of the peace of said county").

Since 1909, Oregon's FED statutes have been silent regarding the resolution of title disputes. Until relatively recently, however, *de facto* limitations continued to exist, insofar as FED actions were frequently heard in courts of limited jurisdiction, until the abolition of district courts in 1998.[6] For example, in 1909, justice courts had jurisdiction to hear FED actions, but they generally lacked jurisdiction to resolve title disputes and were required to transfer to circuit court any action involving a title dispute. Lord's Oregon Laws, title XLVIII, ch XVIII, § 7568 (1910) (jurisdiction to hear FED actions); *id*. at title XII, ch V, § 952 (no jurisdiction to hear "an action in which the title to real property shall come in question"); *id*. at title XX, ch III, § 2435 (requiring transfer from justice to circuit court if pleadings or evidence put title in question). In 1940, that was the situation for both justice courts—*see* OCLA § 8-313 (jurisdiction to hear FED actions); OCLA § 27-105(1) (jurisdiction "does not extend * * * [t]o an action in which the title to real property shall come in question")—and district courts—*see* OCLA § 13-302(5) (jurisdiction to hear FED actions); OCLA § 13-302(10) (requiring the court to strike the pleading or transfer the case "[w]henever it shall appear from the pleadings in any cause that the title to real property is in dispute"). Eventually, justice courts and district courts were given limited authority to address title disputes, without preclusive effect, as discussed later. *See* 327 Or App at 242 (discussing justice courts); 327 Or App at 238-41 (discussing district courts).

As for the circuit courts, which had concurrent jurisdiction of FED actions after 1909, the historical case law is unclear as to whether circuit courts resolved title disputes that arose in FED actions, or whether they understood some constraint to prevent them from doing so, even

---

[6] As noted later, to this day, FED actions may still be brought in justice courts, which have limited authority to address title disputes. However, with the abolition of district courts, most FED actions are now filed in circuit courts.

after the legislature removed the express prohibition from Oregon's FED statute in 1909.

Consider the Supreme Court's 1941 decision in *Schroeder*, which is the case on which plaintiffs primarily rely in the present appeal. *Schroeder* was an FED action between the vendees in possession of real property under a contract to purchase and the vendors who contracted to sell and convey it to them. 166 Or at 94. The circuit court sustained a demurrer and dismissed the action, and the Supreme Court affirmed. *Id.* at 98. The court first described the law regarding FED, including relying on a non-Oregon secondary source as authority that, except for "incidental" title questions, title disputes cannot be litigated or determined in an FED action:

> "The proceeding in an action of forcible entry and detainer is possessory only and the remedy is purely of statutory origin. The only question involved in such case is the plaintiff's right to possession of the premises in dispute and no controversy can be raised as to the merits of the title. \*\*\* 'Except in so far as they may be incidentally involved in showing the right of possession, questions of title are not involved and cannot be litigated or determined.' 36 C.J., p. 623."

*Id.* at 95.

The court then proceeded to hold that it was proper to sustain the demurrer for two independent reasons. The first reason was that the case did not involve unlawful entry (because the defendants had entered peaceably) or unlawful detainer (because the parties were not in a landlord-tenant relationship), so an FED action did not lie. *Id.* at 97-98. In explaining that ruling, the court indicated that it did not matter that the action had been heard in a court of general jurisdiction, because FED is a special statutory proceeding: "Even if the action is tried in a court of record, the latter does not proceed therein by virtue of its power as a court of general jurisdiction, but derives its authority wholly from the statute, and in such proceeding is, therefore, to be treated as a court of special and limited jurisdiction." *Id.* at 96 (internal quotation marks omitted). The court did not explain further.

The second reason given for why it was proper to sustain the demurrer in *Schroeder* was that title cannot be decided or even discussed in an FED action:

> "There is another reason why this action will not lie in the instant case. Under all the authorities, evidence of title is never admissible in a forcible entry and detainer action. 'Title', says Blackstone, 'is the means whereby the owner of lands has the just possession of his property'. 2 Bl. Comm., 195. Or, as sometimes said, 'Title is the means whereby a person's right to property is established', and, as said in *Sommer v. Compton*, 52 Or 173, 178, 96 P 124 [(1908)], 'Legal title draws to it the possession.'

> "Under the provisions of this contract and under the allegations of this complaint, it would not be possible for the plaintiffs to regain possession of this property in any form of action or suit except upon proof of their compliance with the contract and of defendants' default and failure to perform. Such proof would be proof of title and of their present ownership and right to the possession of the property. Such proof, as held in *Twiss v. Boehmer*, 39 Or 359, 65 P 18 [(1901)], and by the authorities above cited, would be inadmissible in an action of forcible entry and detainer. From this it follows that, if evidence of title is not admissible in a forcible entry and detainer action, then the setting up in a complaint of facts constituting title, which could not be proved upon the trial of such action, adds nothing to the sufficiency of the complaint when challenged by demurrer. This affords an additional ground for holding that the demurrer was properly sustained."

*Id.* at 98.

It is important to know that, in 1941, Oregon's FED statute was silent as to title disputes. *See* OCLA §§ 8-301 to 8-328. It is also notable that *Schroeder* relied almost entirely on non-Oregon secondary sources for its broad pronouncements regarding title issues in FED. The only Oregon case cited on that point was *Twiss*, a case decided in 1901 when the Oregon FED statute expressly prohibited inquiry into the merits of title in an FED action.[7] *See* The Codes and

---

[7] *Twiss* does not appear to have involved a title dispute and only briefly mentions a title-related issue. In *Twiss*, the plaintiff leased certain real property for use as a blacksmith shop. 39 Or at 360. When the tenant turned it over to a new tenant without permission, the owner brought an FED action to evict the new

Statutes of Oregon, title XLIII, ch XIX, § 5760 (Bellinger & Cotton 1902) (providing that, in an FED action, "the merits of the title shall not be inquired into").

Describing the full history of Oregon FED law is a gargantuan task that we cannot undertake in this opinion. Suffice it to say that, like the history of English and American FED laws more generally, the history of Oregon FED law is lengthy, complex, and peppered with seeming inconsistencies and statutory ambiguities. Every thesis that we have tested to fully synthesize the large body of existing case law, by reference to the contemporaneous statutes, has failed in the end. Perhaps it is simply too much to ask in an area of the law with more than 850 years of history, including 179 years in Oregon.

What will suffice for present purposes is to make a few key observations regarding the first 133 years of Oregon FED law, from 1844 to 1977:

- From 1850 to 1909, Oregon's FED statute expressly provided that the merits of title were not to be inquired into in an FED action.

- Since 1909, Oregon's FED statute has been silent regarding title disputes in FED actions. Nonetheless, there has remained in the ether an understanding that title is not to be decided in FED actions. That understanding is partially, but not entirely, accounted for by jurisdictional limits on the courts that most often heard FED actions (justice courts, county courts, and district courts).

- It is unclear whether, after 1909, circuit courts considered themselves to have authority to decide title disputes in FED actions.

Having made those observations, we now jump to the year 1977, where we resume a more detailed analysis.

_____

tenant. *Id*. at 360-61. The action was "commenced in a justice's court, and appealed to the circuit court, where judgment was rendered in favor of the plaintiff." *Id*. at 360. The only portion of the opinion addressing title states, "It is next insisted that the court erred in permitting the plaintiff to testify that the property belonged to her. But this was a mere preliminary matter, not offered or intended as proof of title, and could not have been prejudicial to the defendant." *Id*. at 363.

2.    *The end of the district court era (1977-1998)*

Beginning in 1977, district courts[8] had "exclusive jurisdiction" in FED actions. *Former* ORS 46.060(1)(e) (1977).[9] Notwithstanding that district courts had "exclusive" jurisdiction, justice courts and circuit courts also continued to have FED jurisdiction. *See* ORS 105.110 (1977) (allowing an FED action to be maintained "in the circuit court, district court or before any justice of the peace of the county").

Also in 1977, the legislature added a provision to the district courts' jurisdictional statutes that opened the door for their making nonpreclusive title decisions in FED actions (although we would not announce that construction until nearly two decades later in *Lawton*). Or Laws 1977, ch 876, § 6. The new provision applied to all actions, including FED actions, and provided:

"While the title to real property may be controverted or questioned in an action in district court, the judgment in

---

[8] The history of district courts is briefly summarized in Paul J. De Muniz, *Oregon Courts Today and Tomorrow*, 50 Willamette L Rev 291, 293-94 (2014):

"The 1913 legislative session produced Oregon's first district court, exercising its authority under Article VII (Amended) of the Oregon Constitution, vesting the judicial power in one Supreme Court and in such other courts as may from time to time be created by law. The district courts were, in large part, a substitute for justice courts in urban areas, having (like justice courts) limited civil and criminal jurisdiction. By 1997, thirty of Oregon's thirty-six counties had district courts with sixty-three district judges. However, as early as the 1970's, efforts were underway to consolidate the trial courts. In 1998, unable to withstand the mounting pressure for consolidation, the Oregon Legislature abolished all district courts and transferred judicial authority and pending cases to the circuit courts. Without executive appointment or popular election, but by virtue of consolidation, all sitting district court judges became circuit judges."

(Internal quotation marks and footnotes omitted.) *See also* Or Const, Art VII (Amended), § 1 ("The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law."); Stephen P. Armitage, *How the Supreme Court Expanded*, in *History of the Oregon Judicial Department, Part 2: After Statehood*, available at https://soll.libguides.com/c.php?g=519362&p=3551697 (last visited Jul 17, 2023) (current location of the article that is cited in the De Muniz article).

[9] *Former* ORS 46.060 (1977), *amended by* Or Laws 1983, ch 149, § 1; Or Laws 1985, ch 342, § 1; Or Laws 1985, ch 496, § 28; Or Laws 1985, ch 588, § 3a; Or Laws 1987, ch 714, § 8; Or Laws 1989, ch 839, § 33; *repealed by* Or Laws 1995, ch 658, § 127.  In this opinion, when we cite "*former* ORS 46.060" without specifying a year, we mean to refer to the former statute in general terms, rather than in a specific year.

said action shall in no way affect or determine title between the parties or otherwise."

*Former* ORS 46.084 (1977), *amended by* Or Laws 1987, ch 714, § 7, *repealed by* Or Laws 1995, ch 658, § 127.[10]

Somewhat strangely, until 1987, that provision coexisted with *former* ORS 46.060(4), which also applied to all actions in district court, including FED actions, and required a district court to strike the pleading or transfer to circuit court any action in which the pleading indicated a dispute regarding title to real property. We have been unable to find anything in the legislative history that explains how those two provisions coexisted. It is possible that *former* ORS 46.060(4) applied when a title dispute was evident from the pleadings, whereas *former* ORS 46.084 applied when title disputes arose at trial.

In any event, we continued to enforce *former* ORS 46.060(4). In *Long v. Storms*, 50 Or App 39, 45, 622 P2d 731, *rev den*, 290 Or 727, *adh'd to as modified on recons*, 52 Or App 685, 629 P2d 827 (1981), Long filed an FED action in the district court, and Storms asserted in defense that she had a "security arrangement" with Long under which "both parties have an equitable interest in the property." The district court eventually dismissed the FED action with prejudice to both parties. *Id*. at 45-46. Long later filed a second FED action, and Storms again asserted an equitable interest in the property. *Id*. at 46-47. The second FED action was transferred to circuit court under *former* ORS 46.084 because Storms's "answer and counterclaims raised an issue regarding the determination of title to real property." *Id*. at 41. The circuit court found in Long's favor, including possibly relying on the dismissal with prejudice of the first FED action having preclusive effect in the second FED action. *Id*. at 49. On appeal, we held, in relevant part, that the first FED action did not have preclusive effect, as "res judicata *** does not apply to matters over which the original court did not have jurisdiction," *id*. at 46, and the district court did not have jurisdiction to determine title to real property:

---

[10] In this opinion, when we cite "*former* ORS 46.084" without specifying a year, we mean to refer to the former statute in general terms, rather than in a specific year.

"[Storms's] contention in the first FED action that [Long] had only a security interest in the property put the title to the property in issue. Because district courts lack power to determine title to real property, [*former*] ORS 46.084, the trial court in the first FED action lacked jurisdiction over [Storms's] defenses, and the disposition in the district court had no res judicata effect."

*Id*. at 47.

In 1987, the legislature removed *former* ORS 46.060(4) from the district court jurisdictional statutes. Or Laws 1987, ch 714, § 8. At the same time, it added a new waiver provision to *former* ORS 46.084, which allowed district courts to conclusively resolve title disputes in certain limited circumstances:

"(1)   Except as provided in subsection (2) of this section, while the title to real property may be controverted or questioned in an action in district court, the judgment in the action shall in no way affect or determine title between the parties or otherwise.

"(2)   In an action in a district court involving title to real property and in which objections to the jurisdiction of the court are considered waived as provided in [*former* ORS 46.064(3)], a judgment of the court that would affect or determine title to the real property and that is docketed in the judgment docket of the circuit court shall, from the time of that docketing, affect or determine title to the real property as if it were a judgment of the circuit court where it is docketed."

Or Laws 1987, ch 714, § 7; *see also former* ORS 46.064(3) (1987), *amended by* Or Laws 1995, ch 664, § 78, *repealed by* Or Laws 1995, ch 658, § 127 ("If no party has made a motion to transfer and the court is otherwise unaware that a claim is outside the jurisdiction of the court and as a result the court has failed to order a transfer of the case, all objections that jurisdiction is not in the district court but is in the circuit court shall be waived, and a judgment of the district court in the action shall not be void or voidable or subject to direct or collateral attack on the ground that jurisdiction was not in the district court but was in the circuit court.").

In 1995, we applied *former* ORS 46.084(1) in *Lawton*, the case on which defendant primarily relies in the present appeal. The Simpsons brought an FED action in district court to recover possession of real property from Lawton, and Lawton asserted in defense that the Simpsons had defrauded him, that he was the owner of the property, and that he had an enforceable contract to purchase it. *Lawton*, 133 Or App at 491. The district court found in the Simpsons' favor and entered an FED judgment that included findings against Lawton's defenses. *Id*. Lawton subsequently brought a civil action against the Simpsons in circuit court for fraud and other claims. *Id*. The circuit court ruled that the FED judgment barred Lawton from relitigating his claims in the civil action. *Id*. We disagreed and reversed, explaining that, under *former* ORS 46.084(1), the district court had authority to consider Lawton's defenses in the FED action insofar as it affected the right to possession, but that the district court's judgment "was not determinative as to how those defenses affected title" and should not have been given preclusive effect in a civil action regarding title. *Id*. at 491-93.

We reached a similar conclusion a few years later in *Option One Mortgage Corp. v. Wall*, 159 Or App 354, 977 P2d 408 (1999), which is the last published decision construing the district-court jurisdictional statutes. We explained that *former* ORS 46.084(1) (1997) allowed title to be "'controverted or questioned' but not *'determined'*" by district courts, which we construed to mean that district courts could "consider[] arguments regarding the validity of plaintiff's title" in determining whether the plaintiff had the right to possession. *Id*. at 358 (emphasis in *Option One Mortgage Corp.*).

Thus, both *Lawton* and *Option One Mortgage Corp.* stand for the proposition that, under the statutory scheme that was in place from 1987 (when the statute was last amended) until 1998 (when district courts were abolished), district courts could decide title in FED actions insofar as it was necessary to decide the right to possession, but such title decisions lacked preclusive effect in other actions.

And what about circuit courts that heard FED actions? For the two decades that district courts had "exclusive jurisdiction" to hear FED actions (1977 to 1997), circuit

courts continued to hear FED actions in counties without a district court, *see former* ORS 46.060(2) (1975), as well as hearing FED actions transferred from district court because they raised issues beyond the district court's jurisdiction, *see former* ORS 46.060(4) (1975). The very fact of the transfer provision suggests that circuit courts could decide title disputes. As with the earlier period, however, the case law is seemingly silent as to whether circuit courts actually made a practice of resolving title disputes in FED actions. We have found no direct references to their doing so, although the case law is admittedly vast enough that we cannot say with certainty that none exist.

3.   *The modern era (1998-present)*

In 1998, district courts were abolished in Oregon, and "[a]ll jurisdiction, authority, powers, functions and duties of the district courts" were transferred to the circuit courts. Or Laws 1995, ch 658, §§ 1, 3. FED actions are now heard only by circuit courts and justice courts. ORS 105.110 (an FED action may be maintained "in the circuit court or before any justice of the peace of the county" where the property is situated).

Oregon circuits courts have jurisdiction "in respect to any cause of action or suit." ORS 14.030. By contrast, justice courts have limited jurisdiction, which "does not extend to *** [a]n action in which the title to real property shall come in question." ORS 51.090(1). Somewhat confusingly, justice courts are supposed to transfer to circuit court any action in which it appears from the pleadings or evidence "that the title to real property is in question," ORS 52.560, but, at the same time, under ORS 52.590, "title to real property may be controverted or questioned in an action in a justice court," subject to the limitation that the justice court's judgment "shall in no way affect or determine the title as between the parties, or otherwise."

For present purposes, our focus is the circuit courts. "Modernly, there is a single category of general jurisdiction trial court in the state of Oregon, the circuit courts, and those courts have subject matter jurisdiction over FED actions, *see* ORS 105.110, as well as all other civil actions."

*Balboa Apartments*, 237 Or App at 399-400. It follows that any limitation on *circuit courts* adjudicating title disputes in FED actions must derive from the FED statutes, rather than court jurisdictional statutes. *Id*. at 400.

It is readily apparent that, unlike the Oregon FED statutes in effect from 1850 to 1909, the current Oregon FED statutes do not contain any express limitation on the resolution of title disputes in FED proceedings. Oregon courts have nonetheless continued to occasionally invoke or allude to that historical limitation. The most significant statements in that regard are in *Schroeder*, the previously discussed 1941 decision in which the Supreme Court stated in strong terms that title disputes cannot be resolved in FED actions, even in circuit court, and, despite allowing for an exception for "incidental" questions of title, relied on that principle as an independent basis to affirm the dismissal of an FED action involving a title issue. *Schroeder*, 166 Or at 95, 98.

More recently, in *Bunch v. Pearson*, 186 Or App 138, 141-42, 62 P3d 878, *rev den*, 335 Or 422 (2003), in the context of explaining that the trial court lacked authority to award possession to the plaintiff in an FED action because the parties lacked a landlord-tenant relationship (and thus there was no "unlawful holding by force" as statutorily defined), we stated:

> "FED proceedings are statutory in nature and are 'designed to be quick and summary, to obtain peaceful resolutions of possessory disputes.' *Class v. Carter*, 293 Or 147, 150, 645 P2d 536 (1982). Under ORS 105.105 to 105.168, the issue that is to be decided in FED cases is entitlement to possession. Although other statutes may allow for additional remedies, under the FED statutes, '[o]nly one issue is involved: the right of possession.' *Class*, 293 Or at 150."

(Footnote omitted.)

Even more recently, in *Balboa Apartments*, 237 Or App at 400, we summarily acknowledged that title cannot be adjudicated in an FED action, stating, "Although it is true that title to property cannot be adjudicated in an FED action, *see Kerr v. Jones*, 193 Or App 682, 91 P3d 828 (2004), that is a limitation of statutory authority, not a limitation

of the circuit court's subject matter jurisdiction." The only "limitation of statutory authority" discussed in *Kerr* was the historical limitation that only parties in a landlord-tenant relationship could utilize FED procedures. In *Kerr*, the defendant entered the premises lawfully as a tenant and later claimed an ownership interest. 193 Or App at 684. The plaintiff purchased the property at public auction, received a bargain and sale deed, and brought an FED action against the defendant, alleging unlawful holding by force. *Id*. The defendant claimed ownership and a resulting entitlement to possession. *Id*. The court entered an FED judgment in the plaintiff's favor. *Id*. On appeal, we agreed with the defendant "that the trial court lacked authority to award possession to plaintiff in an FED action because both parties claimed title to the property *and there was no landlord-tenant relationship between them*." *Id*. at 684-85 (emphasis added). Without a landlord-tenant relationship, the defendant was not unlawfully holding by force, as that term is defined, and the parties' dispute could not be resolved in an FED action. *Id*. at 686-87.

Only two years ago, we noted briefly in *Bunch v. Lowry*, 313 Or App 398, 399 n 1, 496 P3d 660 (2021), that "an FED proceeding is limited to the determination of the right to possession of premises in the context of a landlord-tenant relationship." (Citing *Schmidt*, 237 Or App at 421.)

At the same time, in a series of cases involving nonjudicial foreclosures decided in recent years, we have implicitly taken the view that Oregon circuit courts have authority to resolve title disputes in FED actions. As noted previously, a purchaser of real property at a trustee's sale may evict a tenant at suffrage in an FED action. ORS 86.782(6)(a). In *Wolf v. GMAC Mortgage, LLC*, 276 Or App 541, 543, 370 P3d 1254 (2016), we held that, under the OTDA, a person's interest in real property cannot be terminated by a trustee's sale unless a "trustee" as defined in the OTDA executed the sale. *Wolf* itself was a declaratory judgment action, but we have applied *Wolf* to reverse FED judgments where the plaintiff failed to prove that the "trustee" executed the sale and, thus, failed to prove the right to possession. *See Bank of New York Mellon v. Owen*, 299 Or App 348, 350-51, 450

P3d 1009 (2019) (concluding that, where the FED defendant challenged the validity of the trustee's deed and the trustee's authority to conduct the foreclosure sale, as relevant to the plaintiff's right to possession, the FED court should have addressed those issues and was wrong to view the FED action as "'not the appropriate forum to challenge the prior foreclosure'"); *Troubled Asset Solutions v. Wilcher*, 291 Or App 522, 530-31, 422 P3d 314 (2018), *rev'd in part on other grounds*, 365 Or 397, 445 P3d 881 (2019) (similar, except that quiet-title action and FED action were consolidated); *Federal Home Loan Mortgage Corp. v. Smith*, 287 Or App 42, 47, 400 P3d 1009 (2017) (similar); *Bank of America, N. A. v. Payne*, 279 Or App 239, 243 n 2, 379 P3d 816 (2016) (reversing an FED judgment where there was "no evidence in the record that the sale of the property was conducted by a validly appointed trustee for purposes of the OTDA" so as to establish that the plaintiff was a purchaser entitled to possession).

   4.  *Conclusions regarding resolving title disputes in FED actions*

        Our recitation of the history of Oregon FED law has barely scratched the surface of 179 years of statutes and case law, yet even what relatively little we have said should give some indication of how complex it is. Spending time in the historical case law can leave one with the distinct impression that certain fundamental principles about FED exist in the ether, untethered to statutory language (even when it exists), particularly that FED actions are supposed to be quick and summary, that they are limited to the issue of possession, and that they are not the proper forum to resolve title disputes.

        Ultimately, however, we have not found any current controlling authority for prohibiting or limiting the resolution of title disputes in FED actions in Oregon circuit courts. The occasional statements found in our own case law since 1909 that could be read to support plaintiffs' position in this appeal appear to be *dicta*. In cases where the parties lack a landlord-tenant or other relationship that allows for the use of FED procedures—such as *Bunch v. Pearson* and *Kerr*—it would be more accurate to say that the parties cannot resolve

*anything* in an FED action, than to say that an FED action is limited to the issue of possession. And generic statements about "possession" being the sole issue in an FED action—as made in *Balboa Apartments* and *Bunch v. Lowry*—are potentially misleading given the complex history of different courts' authority to decide title disputes as part of deciding possession.

The most difficult precedent to account for is *Schroeder*. The Supreme Court's statements in that case—that controversies regarding the merits of title cannot be raised in FED actions, except perhaps "incidental" questions of title (an exception neither explained nor applied), and that evidence of title is inadmissible in FED actions—cannot be understood as *dicta*, because they formed the legal basis for an alternative holding. *See Schroeder*, 166 Or at 95, 98. At the same time, those statements seem entirely untethered to the 1941 Oregon FED statute—despite the court's emphasis on the statutory nature of FED and the importance of adhering strictly to the statutory procedures. *See id*. at 96 ("As said in 22 Am Jur, p 934, section 35: 'Since the action of forcible entry and detainer is a special statutory proceeding, summary in its nature, and in derogation of the common law, it is a rule of universal application in such actions that the statute conferring jurisdiction must be strictly pursued in the method of procedure prescribed by it, or the jurisdiction will fail to attach, and the proceeding be coram non judice and void.'"[11]).

The *Schroeder* court relied for those statements primarily on non-Oregon secondary sources, citing only one Oregon case regarding title in FED actions, which was decided in 1901 and is readily distinguishable because, in 1901, Oregon's FED statute expressly prohibited any inquiry into the merits of title in an FED action—a provision that was removed from the FED statute in 1909, more than three decades before *Schroeder* was decided. Lacking any insight into the statutory source for *Schroeder*'s reasoning, we cannot discern its logic or meaningfully compare the

---

[11] A case tried by a court "'that hath no jurisdiction of the cause'" is "'coram non judice, and utterly void.'" *Trutch v. Bunnell*, 11 Or 58, 60, 4 P 588 (1883) (quoting Hobart 53).

1941 FED statute to the current FED statutes to determine whether that logic still holds or whether, due to statutory changes over the past 80 years, it is simply no longer good law. Notably, however, our court has issued various decisions since 1995 that effectively disregard *Schroeder*'s broad pronouncements regarding title issues in FED actions, presumably based on an understanding that they do not control our construction of the modern FED statutes. We refer particularly to *Lawton*, 133 Or App at 491; *Option One Mortgage Corp.*, 159 Or App at 357-58; and the aforementioned line of cases involving nonjudicial foreclosure. We similarly decline to view *Schroeder* as controlling authority at this point, with respect to resolution of title disputes in FED actions, as we simply cannot reconcile *Schroeder* with the current FED statutes or our last 28 years of case law regarding FED actions.

We therefore reject plaintiffs' argument that Oregon circuit courts lack jurisdiction to resolve title disputes in FED actions. It is indisputable that Oregon circuit courts have subject matter jurisdiction to decide title disputes. As for statutory authority to do so in an FED action, resolving title disputes in FED actions is somewhat at odds with the oft-cited principle that FED actions are "quick and summary" in nature. *Class*, 293 Or at 150; *Bunch*, 313 Or App at 399 n 1; *see also, e.g.*, *Lexton-Ancira, Inc. v. Kay*, 269 Or 1, 5-6, 522 P2d 875 (1974) ("An FED proceeding is a special statutory proceeding of a summary nature designed to secure the speedy restitution of premises forcibly or unlawfully detained."); *Friedenthal*, 146 Or at 643 (describing FED "as an expeditious method to obtain possession of real property that [i]s being withheld from the owner by force"); *Wolfer v. Hurst*, 47 Or 156, 166, 82 P 20 (1905) ("The relief by forcible entry and detainer is unquestionably designed as a summary proceeding to give speedy and prompt relief[.]").

Indeed, some states expressly provide in their FED statutes that a title dispute cannot be litigated in an FED action, at least in part due to the summary nature of FED proceedings. *E.g.*, Ariz Rev Stat Ann § 12-1177(A) ("On the trial of an action of forcible entry or forcible detainer, the only issue shall be the right of actual possession and the

merits of title shall not be inquired into."); Alaska Stat § 09.45.150 ("In an action to recover the possession on the land, tenement, or other real property where the entry is forcible or when the possession is unlawfully held by force, there shall be no inquiry into the merits of the title."); *see also, e.g.*, Fla Stat § 82.04 ("The court shall determine only the right of possession and any damages. Unless it is necessary to determine the right of possession or the record title-holder, the court may not determine the question of title."). On this point, the Arizona Supreme Court has stated:

> "[T]he object of a forcible entry and detainer action is to afford a summary, speedy and adequate remedy for obtaining possession of premises withheld by tenants, and for this reason this objective would be entirely frustrated if the defendant were permitted to deny his landlord's title, or to interpose customary and usual defenses permissible in the ordinary action at law."

*Olds Bros. Lumber Co.*, 64 Ariz at 204-05, 167 P2d at 397.

As previously discussed, Oregon FED law used to contain such a provision. From 1850 to 1909, the Oregon FED statute expressly prohibited inquiry into the merits of title in an FED action. *See* 327 Or App at 232-34). That provision was removed in 1909, however, and the legislature has not seen fit to put it back. It is possible that the 1909 legislature assumed that the limitation would still apply, as somehow fundamental to the nature of FED, but that is purely speculation on an issue shrouded in history. Regardless of why the provision was removed in 1909 or what the 1909 legislature expected, the fact is that FED is a creature of statute, and no one has identified, nor have we found, anything in the current Oregon statutes that in any way can be read to prohibit or limit resolution of title disputes in FED actions in circuit court.

Under the circumstances, we can only conclude that circuit courts are free to resolve title disputes in FED actions. Circuit courts are not necessarily *required* to resolve a title dispute in an FED action. *See Bunch*, 313 Or App at 399 n 1 ("To the extent that the trial court was concerned that certain overlapping issues related to possession were better addressed in the civil action than the quick and

summary FED procedure, the proper remedy would have been an appropriately crafted stay of the FED action rather than dismissal."). However, they have the jurisdiction and authority to do so. They also have discretion to deny a defendant's request that an FED action be stayed pending resolution of title in an ordinary civil action, as was exercised in this case.

C.  *The Application of Issue Preclusion*

Having concluded that Oregon circuit courts have authority to resolve title disputes in FED proceedings, we turn to the matter of issue preclusion, specifically whether findings regarding title made in an FED action are issue preclusive.

"If one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met[.]" *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993). Those requirements are: (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which this court will give preclusive effect. *Id*. Ultimately, the court "must also consider the fairness under all the circumstances of precluding a party." *Minihan v. Stiglich*, 258 Or App 839, 855, 311 P3d 922 (2013) (internal citations omitted).

In this case, it is undisputed that plaintiffs were parties to the FED action. Plaintiffs dispute that the issue is identical, characterizing the issue in the FED action as "possession" and the issue in this action as "title"; however, that is really just a reiteration of their argument that the circuit court lacked authority to decide title in the FED action, which we have already rejected. As for whether plaintiffs had a full and fair opportunity to be heard on the issue, we can easily imagine a situation in which a party could successfully argue that they were not given a full and

fair opportunity to litigate title in an FED proceeding, such that issue preclusion should not apply to any title findings. Here, however, we do not understand plaintiffs to make that argument, or at least they have not meaningfully developed such an argument on appeal (and only indirectly made such an argument in opposing summary judgment in the trial court). The record suggests that plaintiffs may have been surprised by the denial of their abatement motion in the FED proceeding. But plaintiffs have never argued that they lacked sufficient time to prepare to litigate title in the FED action, under circumstances that would constitute the lack of a full and fair opportunity to be heard on that issue, or that the FED court did not provide them sufficient time to present their evidence.

Rather, we understand plaintiffs' argument against issue preclusion to turn on the fifth requirement, *i.e.*, that "the prior proceeding was the type of proceeding to which this court will give preclusive effect." *Nelson*, 318 Or at 104. We have already rejected plaintiffs' primary argument, that circuit courts generally lack jurisdiction or authority to resolve title disputes in FED actions. That does not necessarily resolve, however, whether FED actions are a type of proceeding to which we will give preclusive effect, so we consider that issue further.

As a general rule, "[a] circuit court's findings in the context of an FED proceeding are entitled to preclusive effect." *Schmidt*, 237 Or App at 420. In *Carter v. Ricker*, 241 Or 342, 345, 405 P2d 854 (1965), the Supreme Court held that an FED judgment was entitled to preclusive effect in a civil fraud action, such that the plaintiffs could not relitigate whether they had a five-year lease for real property.

Our decision in *Perkins v. Conradi*, 151 Or App 585, 950 P2d 380 (1997), *adh'd to as modified on recons*, 153 Or App 273, 956 P2d 1022, *adh'd to as modified on recons*, 154 Or App 439, 959 P2d 1013, *rev den*, 328 Or 40 (1998), is especially pertinent. The Conradis instituted an FED action to recover possession of a 40-acre parcel of property from Perkins, and Perkins argued in defense that he owned five acres of the property. *Id*. at 587. The FED action was transferred from district court to circuit court for trial because of the title

dispute. *Id*. The circuit court "ruled that [the Conradis] had failed to prove their FED claim and that [Perkins] was the owner of the five-acre parcel." *Id*. Meanwhile, Perkins filed a declaratory judgment action, alleging that he owned the entire 40-acre parcel. *Id*. at 587-88. The court granted summary judgment for the Conradis in the declaratory judgment action, reasoning that claim preclusion barred the action because Perkins "had the opportunity to litigate his interest in the remaining 35 acres in the FED proceeding." *Id*. at 588.

We affirmed. *Id*. at 590. We pointed out that the Conradis had sought to evict Perkins from the entire 40-acre parcel in the FED action; that Perkins "reduced the dispute to who owned five acres of the 40-acre parcel"; that nothing prevented Perkins "from making the same claim as to the remaining 35 acres" in the FED action; and that Perkins offered the same evidence to prove ownership of the 40 acres in the declaratory judgment action as he had used to prove ownership of five acres in the FED action. *Id*. at 589-90. In giving preclusive effect to the FED judgment, we contrasted *Lawton*, 133 Or App at 491-92, which we described as "holding that because an FED action was tried in district court, the court did not have jurisdiction to determine title to real property and, thus, the plaintiff was not barred from bringing [another] action." *Perkins*, 151 Or App at 590 n 3.

With respect to title disputes relevant to the right to possession, *Perkins* supports the proposition that an FED action tried in the circuit court is a type of proceeding to which we will give preclusive effect—and that the same was true even when we would not give preclusive effect to title determinations by district courts.

The fifth and final requirement for issue preclusion—that "the prior proceeding was the type of proceeding to which this court will give preclusive effect," *Nelson*, 318 Or at 140—is therefore satisfied in this case. Accordingly, the trial court did not err by giving preclusive effect to the FED judgment—specifically as to the issue of whether an agreement existed between Duane and his father regarding ownership of the motel property—or by consequently granting summary judgment for defendant on plaintiffs' quiet title,

breach of contract, and fraud claims. We affirm the summary judgment ruling.

### III.   INVOLUNTARY DISMISSAL RULING
### (WAGE CLAIM)

That leaves the wage claim, which was tried to the court. Plaintiffs brought the wage claim under ORS 652.140, which provides that, "[w]hen an employer discharges an employee * * *, all wages earned and unpaid at the time of the discharge * * * become due and payable not later than the end of the first business day after the discharge * * *." The Wage Claim Act does not define "employer" or "employee" specifically for purposes of ORS 652.140, but we have previously looked to the definitions in ORS 652.210 to interpret undefined terms in ORS 652.140. *Wyatt v. Body Imaging, P.C.*, 163 Or App 526, 530, 989 P2d 36, *rev den*, 330 Or 252 (1999). ORS 652.210(2) defines an "employee" as "any individual who, otherwise than as a copartner of the employer, [or] as an independent contractor * * *, renders personal services wholly or partly in this state to an employer who pays or agrees to pay such individual at a fixed rate."

Plaintiffs presented evidence from Ruth, Duane, and Kathy about the work that plaintiffs had done at the motel property over the years, their expectations of compensation for that work, and the communications between Duane, Kathy, Paul, and Ruth about compensation. Plaintiffs also contended that the judgment in the FED action had issue preclusive effect as to the existence of an employment relationship for purposes of their wage claim.

At the close of plaintiffs' evidence, defendant moved to dismiss the wage claim under ORCP 54 B(2), which allows dismissal if "upon the facts and the law the plaintiff has shown no right to relief." Dismissal under ORCP 54 B(2) may be based on the plaintiff's failure to present a *prima facie* case, or on the trial court's assessment of the ultimate persuasiveness of the plaintiff's evidence. *Venture Properties, Inc. v. Parker*, 223 Or App 321, 340-41, 195 P3d 470 (2008).

The court rejected plaintiffs' contention that issue preclusion applied and established an employment

relationship for the wage claim. It also granted the ORCP 54 B(2) motion, stating "that plaintiffs * * * failed to prove that they had worked at the Bear Creek Motel in the relevant period other than as a copartner of the employer or as an independent contractor, that the plaintiffs * * * failed to prove that defendant as an employer had paid or agreed to pay plaintiffs at a fixed rate, and that plaintiffs * * * failed to prove monetary damages recognizable in a wage claim action."

On appeal, plaintiffs make three arguments regarding the dismissal of the wage claim, which we address in turn, again reviewing the application of issue preclusion for errors of law. *Berg*, 297 Or App at 327. Where, as here, we are not reviewing *de novo*, we will affirm the trial court's dismissal of a claim under ORCP 54 B if "any evidence" supports rejecting the claim, "regardless of whether the plaintiff has proffered legally sufficient evidence of the claim." *Venture Properties, Inc.*, 223 Or App at 332.

First, plaintiffs argue that their status as employees was a fact actually litigated and established in the FED action that should have been given preclusive effect in the quiet-title action. The FED court expressly found that Duane "was the manager of the motel." Moreover, defendant filed the FED action under ORS 91.120, which applies to eviction of an "employee described in ORS 90.110(7)," *i.e.*, "an employee of a landlord whose right to occupancy is conditional upon employment in and about the premises." On appeal, plaintiffs argue that those facts "evidenc[e] an employer-employee relationship for the purposes of this case" and, consequently, that the trial court erred in not applying issue preclusion as to the employment issue.

The problem with plaintiffs' first argument is that it fails to acknowledge that the term "employee" is susceptible of more than one meaning. Before the trial court, plaintiffs argued that the FED judgment conclusively established an employment relationship for purposes of the wage claim. Defendant responded that (1) "employment" refers to different things in different contexts and can include relationships that are not subject to wage claims, and (2) the employment relationship at issue in the FED action—Duane's status as an

"employee" for purposes of ORS 90.110(7)—is one not subject to wage claims. The trial court agreed with defendant. On appeal, plaintiffs reassert their argument that an employment relationship was established in the FED action, but they do not acknowledge or respond to the trial court's conclusion that whether plaintiffs were employees for purposes of making wage claims is different from whether Duane was an employee within the meaning of ORS 90.110(7). In the absence of any argument on that point, plaintiffs have not shown any error by the trial court in rejecting their contention that issue preclusion applied as to the employment issue.

Second, plaintiffs argue that the trial court erred in stating that a promise to pay equity in the hotel was not a promise to pay "wages" within the meaning of ORS 652.140. Plaintiffs contend that they proved that Paul and Ruth promised to pay Duane 50 percent of the increase in equity in the Bear Creek Motel "at such time as the motel was sold," along with any amounts that Duane put into the motel, and that such promise was a promise to pay "wages" under ORS 652.140.

In light of the trial court's other findings, that argument cannot lead to reversal. As explained above, the court found that "plaintiffs *** failed to prove that they had worked at the Bear Creek Motel in the relevant period other than as a copartner of the employer or as an independent contractor." That is, the court found that plaintiffs had failed to establish an employment relationship of the kind required by ORS 652.140. ORS 652.140 provides that "[w]hen an employer discharges an employee ***, all wages earned and unpaid at the time of the discharge *** become due and payable not later than the end of the first business day after the discharge ***." (Emphasis added.) Absent an employment relationship, it does not matter whether the promise to pay 50 percent of the equity at such time as the motel was sold was too indefinite to qualify as "wages." Thus, we do not consider plaintiffs' second argument further.[12]

---

[12] In their reply brief, plaintiffs seem to argue, for the first time, that, even if issue preclusion did not apply, their evidence was sufficient to show that they were employees of defendant within the meaning of ORS 652.140. Even assuming

Third, plaintiffs argue that the trial court should have at least required defendant to pay them $2,000 per month as compensation, based on Ruth's testimony that Paul had told her at one point that plaintiffs were taking the first $2,000 of motel earnings each month, coupled with Kathy's testimony that neither she nor Duane ever received any money from the motel that they did not put back into the motel. That argument fails to appreciate the standard of review for an ORCP 54 B(2) motion. It does not matter whether there was evidence that would have supported a verdict for plaintiffs; all that matters is whether "any evidence" supports rejecting the claim. *Venture Properties, Inc.*, 223 Or App at 332. Having reviewed the record, we cannot say that the court was required to find that plaintiffs were entitled to $2,000 per month in wages that they did not receive.

Ultimately, we understand plaintiffs' wage-claim arguments to proceed from the premise that, because the trial court rejected at summary judgment their claims of ownership in the motel property—defeating their other claims against defendant—the trial court was obligated to ensure some compensation for their work running the motel by awarding them wages. That premise fails to account for the nature of a wage claim, however, which applies only in specific circumstances, as discussed above. In this case, where those specific circumstances were not proven to exist, a wage claim cannot stand in for an unjust enrichment claim or some other equitable claim for compensation that was not brought. We affirm the dismissal of the wage claim under ORCP 54 B(2).

Affirmed.

---

that we would consider an argument raised for the first time in the reply brief, we note that, under our standard of review, the question is not whether their evidence was sufficient to allow a trier of fact to find that they were employees, but, rather, whether "any evidence" supports the trier of fact's finding that they were not. *Venture Properties, Inc.*, 223 Or App at 332. Under that standard of review, their argument is unavailing.